[No. A102513. First Dist., Div. Three. June 22, 2004.]

STANLEY JANIK, Plaintiff and Appellant, v.
RUDY, EXELROD & ZIEFF et al., Defendants and Respondents.

**COUNSEL**

Lakeshore Law Center and Jeffrey Wilens for Plaintiff and Appellant.

Murphy, Pearson, Bradley & Feeney and Michael P. Bradley for Defendants and Respondents.

## OPINION

**POLLAK, J.**—Plaintiff seeks to impose liability on attorneys who produced a class action recovery of some $90 million, claiming they were negligent because they failed to obtain a still larger recovery. While we may share the attorneys' dismay that their efforts have been rewarded with this lawsuit rather than with the kudos they no doubt expected, and perhaps deserve, we are nonetheless constrained to hold that plaintiff's claim cannot be rejected out of hand. While it may well be that the attorneys did not breach their duty of care in failing to proceed under an alternative theory that would have produced a greater recovery, we cannot say, as did the trial court, that there simply was no duty for the attorneys to breach.

█ Plaintiff Stanley Janik brought this purported class action for legal malpractice against defendants Steven Zieff and the law firm of Rudy, Exelrod & Zieff, LLP (collectively defendants or the attorneys), alleging that the attorneys mishandled a prior class action against Farmers Insurance Exchange (Farmers). While having secured recovery for a large class of claims representatives who were not paid overtime compensation on the ground that they were administrators to whom the applicable regulations under the Labor Code assertedly did not apply, the attorneys are faulted for not having sought recovery under the unfair competition law, Business and Professions Code section 17200 (UCL). Under the UCL, the statute of limitations would have permitted recovery for overtime wages earned but unpaid during the four-year period preceding the filing of the complaint, rather than for only the three-year period available under the Labor Code. The trial court sustained defendants' demurrer without leave to amend on the ground that the attorneys had no duty to class members with respect to claims that were not specified in the order certifying a class. Although there is little precedent to guide us, we do not believe that the obligations of class counsel can be so narrowly circumscribed. While the scope of the duty of class counsel must be determined with reference to the certification order, we conclude that the attorneys' obligations may extend beyond the claims as certified to related claims arising out of the same facts that class members reasonably would expect to be asserted in conjunction with the certified claims. Accordingly, we must reverse the judgment and require the attorneys to establish that they did not breach the applicable standard of care before they may be exonerated.

### Factual and Procedural Background

In October 1996, defendants filed an action against Farmers on behalf of approximately 2,400 of its claims representatives to recover for the nonpayment of overtime compensation. (*Bell v. Farmers Insurance Exchange* (Super. Ct. Alameda County, 2001, No. 774013-0) (*Bell*).) The complaint alleged a

single cause of action for violation of overtime rights under Labor Code section 1194 and related Labor Code provisions. In May 1998, the trial court certified the following class of plaintiffs: "all current and former employees of defendant Farmers Insurance Exchange who have worked in the State of California from October 1, 1993 to the date of trial ('the class period') who have been assigned to handle property, auto physical damage ('APD') and liability claims in Farmers Insurance Exchange's Personal Lines Division with respect to the foregoing claims." The order created separate subclasses for APD claims representatives, property claims representatives and liability claims representatives.

After notice and an opportunity to opt out of the class had been given to class members, the class plaintiffs moved for summary adjudication to establish that the claims representatives were not administrators exempt from the overtime regulations of the Industrial Welfare Commission[1] and, therefore, that they were entitled to overtime pay. In April 1999, the court granted the plaintiffs' motion, holding that none of the three subclasses of claims representatives was employed in an administrative capacity and therefore that all class members were entitled to statutory overtime premiums under Labor Code section 1194, subdivision (a). The trial court's order was affirmed in an appeal that Farmers successfully took from an interim order awarding attorney fees based on the summary adjudication. (*Bell v. Farmers Ins. Exchange* (2001) 87 Cal.App.4th 805 [105 Cal.Rptr.2d 59].) The remaining issue of damages then went to trial before a jury, resulting in a verdict for the plaintiff class for approximately $90 million in unpaid overtime wages. Judgment was entered in the *Bell* case in September 2001, and this judgment recently has been upheld on appeal with only minor modifications. (*Bell v. Farmers Insurance Exchange* (2004) 115 Cal.App.4th 715 [9 Cal.Rptr.3d 544].)

The present action was filed in October 2002 and alleges two causes of action, for legal malpractice and for breach of fiduciary duty, both arising out of the handling of the *Bell* action. The complaint alleges that "[d]efendants could have amended the Bell complaint as late as the time of trial to allege the claim under the UCL either as a class action, or at least a representative action. Had defendants used proper skill and care in the handling of the Bell action they would have done so. From the date the Bell action was filed, and even before then, it was well established that any conduct that violated the Labor Code would also necessarily violate the UCL. Moreover, there was authority in the 1996 to 2000 time frame that unpaid wages could be

---

[1] The motion was to adjudicate the lack of merit to the affirmative defense that the class members were administrators not subject to the overtime regulations.

recovered as an item of restitution in a UCL action. [¶] . . . On June 5, 2000, in *Cortez v. Purolator Air Filtration Products Co.* [(2000)] 23 Cal.4th 163 [96 Cal.Rptr.2d 518, 999 P.2d 706] [(*Cortez*)], the California Supreme Court confirmed prior authority that unlawfully withheld wages may be recovered as a restitutionary remedy in a UCL action and that the UCL's four-year limitations period governs a UCL action based on failure to pay wages. . . . [¶] . . . As a proximate result of the negligence of defendants, plaintiff and class members lost their opportunity to recover millions of dollars of restitution for unpaid wages earned during the Extra Year." The second cause of action incorporated these allegations and added that "[d]efendants breached their fiduciary duty to plaintiff and the class members by failing to seek all available relief to which they were entitled."

Defendants demurred to the complaint on the ground that plaintiff failed to allege a duty of care on the part of the attorneys to protect the "alleged interests" of plaintiff or of the class he purports to represent. The "complaint rests," the attorneys argued, "on the insupportable notion that unnamed class members, with whom class counsel have no retainer agreements, have a legal right to demand that class counsel represent them with respect to claims other than those that the superior court specifically approves as class claims pursuant to its supervisory powers over class actions and through the class certification order." (Underscoring in original.) The trial court sustained the demurrer without leave to amend and dismissed the complaint. Plaintiff filed a timely notice of appeal.

## Discussion

■ The principal issue raised on appeal is whether defendants, as attorneys for the plaintiff class in the *Bell* action, owed class members a duty of care to consider and protect their interests with respect to any claims they might have beyond those specified in the class certification order. "The question of the existence of a legal duty of care in a given factual situation presents a question of law which is to be determined by the courts alone." (*Nichols v. Keller* (1993) 15 Cal.App.4th 1672, 1682 [19 Cal.Rptr.2d 601].) We review the trial court's ruling on the demurrer de novo. (*Id.* at p. 1685.)

1. *Defendants owed class members a duty to consider and assert as appropriate all related claims arising out of the same facts as the claims included in the certification order that class members would reasonably expect to be considered.*

■ Generally, the attorney-client relationship imposes upon the lawyer the obligation to represent his client with " 'such skill, prudence, and diligence as lawyers of ordinary skill and capacity commonly possess and

exercise in the performance of the tasks which they undertake.' " (*Kirsch v. Duryea* (1978) 21 Cal.3d 303, 308 [146 Cal.Rptr. 218, 578 P.2d 935].) "It is well settled in California that an attorney is subject to liability for malpractice when his or her negligent investigation, advice, or conduct of the client's affairs results in loss of a meritorious claim. [Citation.] When rendering advice to a client, '[A]n attorney assumes an obligation to his client to undertake reasonable research in an effort to ascertain relevant legal principles and to make an informed decision as to a course of conduct based upon an intelligent assessment of the problem.' [Citation.] This includes a duty to 'discover those additional rules of law which, although not commonly known, may readily be found by standard research techniques.' " (*Stanley v. Richmond* (1995) 35 Cal.App.4th 1070, 1092 [41 Cal.Rptr.2d 768].)

Defendants do not dispute that, once the class was certified in *Bell, supra*, No. 774013-0, they assumed a duty to all representative and absent class members to competently represent their interests in pursuing the claims as to which the class was certified. (See *7-Eleven Owners for Fair Franchising v. Southland Corp.* (2000) 85 Cal.App.4th 1135, 1159 [102 Cal.Rptr.2d 777]: *Cal Pak Delivery, Inc. v. United Parcel Service, Inc.* (1997) 52 Cal.App.4th 1, 11–12 [60 Cal.Rptr.2d 207]; *Kleiner v. First Nat. Bank of Atlanta* (N.D.Ga. 1983) 102 F.R.D. 754, 769, vacated in part by *Kleiner v. First Nat. Bank of Atlanta* (11th Cir. 1985) 751 F.2d 1193.) Reported decisions in cases addressing other issues assume the right of class members to hold class counsel responsible for negligence in the handling of claims certified for class treatment. (E.g., *Ferguson v. Lieff, Cabraser, Heimann & Bernstein* (2003) 30 Cal.4th 1037, 1043–1044 [135 Cal.Rptr.2d 46, 69 P.3d 965]; *Gordon v. Law Offices of Aguirre & Meyer* (1999) 70 Cal.App.4th 972, 975–976 [83 Cal.Rptr.2d 119]; *Zimmer Paper Products, Inc. v. Berger & Montague, P.C.* (3rd Cir. 1985) 758 F.2d 86, 93–94.) Defendants assert, however, that the duty they owed to class members was limited to the competent handling of those claims for the prosecution of which the class was certified, and that they had no duty to expand the complaint to allege additional claims or to provide any advice or services of any kind with respect to other potential claims. Because the *Bell* class was certified for the purpose of asserting only a cause of action under the Labor Code for unpaid overtime wages earned during the three-year period preceding the filing of the complaint, defendants contend they had no obligation to consider whether class members had any other or greater claims against Farmers arising out of the practice on which the certified claim was based. Defendants argue that the certification order is the analogue of an attorney-client retainer agreement, which defines the scope of the representation that the attorney undertakes and for which the attorney may be held responsible. Similarly, defendants argue, the scope of class counsel's duty to class members is defined by the court's certification order.

■ Plaintiff places principal support for a broader understanding of the obligations of class counsel on the California Supreme Court's decision in *City of San Jose v. Superior Court* (1974) 12 Cal.3d 447 [115 Cal.Rptr. 797, 525 P.2d 701]. In *City of San Jose*, the court held that the trial court abused its discretion in certifying a class in part because the named plaintiffs failed to adequately represent the members of the class. There, property owners situated in the flight pattern of the San Jose Municipal Airport were asserting nuisance and inverse condemnation claims against the City of San Jose, but sought to recover only damages for diminution in the market value of their property. In order to eliminate issues that might defeat class certification, the plaintiffs did not seek additional damages for annoyance, inconvenience, or actual physical injury to which some property owners may have been entitled. The court concluded that the named plaintiffs' representation was inadequate and a class should not have been certified because a cause of action may not be split, and the named plaintiffs "fail to raise claims reasonably expected to be raised by the members of the class and thus pursue a course which, even should the litigation be resolved in favor of the class, would deprive class members of many elements of damage." (*Id.* at p. 464.) The court reiterated that representative plaintiffs owe absent class members a fiduciary duty, and concluded that because the members of the class would reasonably be expected to seek recovery of damages beyond those pled in the complaint, "by certifying this class, the trial court sanctioned a clear violation of plaintiffs' fiduciary duty." (*Ibid.*) While *City of San Jose* involved the duty of a representative plaintiff, the duty of class counsel is no less. (*Amchem Products, Inc. v. Windsor* (1997) 521 U.S. 591, 626, fn. 20 [138 L.Ed.2d 689, 117 S.Ct. 2231]; *State v. Homeside Lending, Inc.* (Vt. 2003) 175 Vt. 239 [2003 VT 17, 826 A.2d 997, 1013, 1015].) The *City of San Jose* decision thus implies that those who assume the responsibility of pursuing claims on behalf of a class assume the duty to protect all claims that class members would reasonably expect to be asserted in the litigation that will be lost if not then asserted.

The more recent Court of Appeal decision in *Hicks v. Kaufman & Broad Home Corp.* (2001) 89 Cal.App.4th 908 [107 Cal.Rptr.2d 761] supports the same view. In that case, the trial court refused to certify a class of homeowners suing the developer and general contractor for defects in the concrete foundations under their homes. The developer contended that the named plaintiffs had violated their fiduciary duty to the class by limiting the recovery they demanded on behalf of the class to the cost of repairing or replacing the foundations. "In doing so," the Court of Appeal observed, "plaintiffs are effectively waiving on behalf of thousands of class members any possibility of recovery for property damage to their homes because

a judgment on the breach of implied and express warranty causes of action would bar recovery in a second suit on the same legal theories." (*Id.* at p. 924.) In reversing the order denying class certification as to those claims, the Court of Appeal did not suggest that the class representatives owe no duty to absent class members to ensure that their related claims for property damages are preserved, but held that there were several approaches by which the trial court could certify a class and still ensure that class members retained any claims they might have for additional damages. (*Id.* at pp. 924–926.)[2]

Defendants cite no case, and we have found none, that stands for the proposition that class counsel have no duty to class members extending beyond the prosecution of class members' claims as they are literally described in the class certification order. Rather, they rely on a misreading and selective quotation from several cases that hold no such thing. For example, as just noted, while *Hicks v. Kaufman & Broad Home Corp.*, may have "rejected the contention that the class representatives and their counsel had breached their duty to the class by choosing not to raise a particular legal theory . . ." (*Hicks v. Kaufman & Broad Home Corp., supra*, 89 Cal.App.4th at pp. 924–926), it did not reject the premise that these parties owed a duty to the class to protect its interests with respect to additional related claims. Similarly, *Kleiner v. First Nat. Bank of Atlanta, supra*, 102 F.R.D. at page 769, vacated in part, *Kleiner v. First Nat. Bank of Atlanta, supra*, 751 F.2d 1193, does not stand for the proposition that "class counsel *only* 'assumes responsibility to class members for diligent, competent prosecution of the certified claims.' " (Italics added.) In *Kleiner*, the court held that unauthorized communication with class members by the defendant's attorneys was a violation of the rules of professional conduct. (102 F.R.D. at pp. 769–770.) In discussing whether an attorney-client relationship had been formed between the plaintiff's attorney and absent class members at the time of the communication, the *Kleiner* court noted, "Once a class has been certified, some but not all aspects of the relationship are present. A lawyer who represents the named plaintiff in a class which has been certified immediately assumes responsibility to class members for the diligent, competent prosecution of the certified

---

[2] See also, e.g., *Seale v. Nissan Motor Acceptance Corp.* (S.D.Ala. Mar. 7, 1996, Civ. A. No. 95-1008-BH-M) 1996 U.S. Dist. LEXIS 21945) [plaintiffs' waiver in purported class action of claims for damages in excess of jurisdictional amount required for federal jurisdiction "would amount to a breach of their fiduciary duty as class representatives"]; but see, e.g., *Fields v. Oakwood Mobile Home, Inc.* (S.D.Ala. 1999) 71 F.Supp.2d 1205, 1207–1208 [class plaintiff may represent only those class members who are willing to waive claims in excess of jurisdictional amount and do not opt out of class]; accord, *Holcombe v. Smithkline Beecham Corp.* (E.D.Wis. 2003) 272 F.Supp.2d 792, 797.)

claims. However, it cannot truly be said that he fully 'represents' prospective class members until it is determined that they are going to participate in the class action." (*Id.* at p. 769.) The court there was focusing on the point in time at which the attorney-client relationship arises, not the scope of that relationship. Clearly the court did not hold, as defendants suggest, that class counsel's obligation to absent class members does not extend beyond the diligent prosecution of class members' claims as they are literally described in the class certification order.

There is merit in defendants' suggestion that the obligations of class counsel under a class certification order should be analogized to the obligations that an attorney assumes under a retainer agreement. The analogy, however, does not support defendants' position. We find no support for defendants' broad assertion that "an attorney cannot be sued in malpractice for failing to raise claims beyond the scope of a retainer agreement." True, the extent of an attorney's duty to act necessarily depends on the scope of the attorney-client relationship (1 Mallen & Smith, Legal Malpractice (5th ed. 2000) § 8.2, p. 774), and the scope of this relationship may be limited by the agreement between the attorney and the client (Vapnek et al., Cal. Practice Guide: Professional Responsibility (The Rutter Group 2003) ¶ 3:23, p. 3-7). But an attorney who undertakes one matter on behalf of a client owes that client the duty to at least consider and advise the client if there are apparent related matters that the client is overlooking and that should be pursued to avoid prejudicing the client's interests. "[E]ven when a retention is expressly limited, the attorney may still have a duty to alert the client to legal problems which are reasonably apparent, even though they fall outside the scope of the retention." (*Nichols v. Keller, supra,* 15 Cal.App.4th at p. 1684; see *Piscitelli v. Friedenberg* (2001) 87 Cal.App.4th 953, 983–985 [105 Cal.Rptr.2d 88]; see also Vapek et al., Cal. Practice Guide: Professional Responsibility, *supra,* ¶¶ 3.21, 3.39–3.40, pp. 3-6, 3-13 to 3-14.)

The situation in *Nichols v. Keller* provides a good illustration. There, the client retained counsel to prosecute a workers' compensation claim, which was handled properly, but brought an action against the attorneys for having failed to advise him that he had potential claims against third parties. The trial court granted the attorneys' motion for summary judgment on the ground that the attorneys had limited their representation to the workers' compensation claim and therefore had no duty to inform him of or initiate a third party action on his behalf. The Court of Appeal reversed, pointing out that "[o]ne of an attorney's basic functions is to advise. Liability can exist because the attorney failed to provide advice. Not only should an attorney furnish advice when requested, but he or she should also volunteer opinions when necessary to further the client's objectives. The attorney need not advise and caution of every possible alternative, but only of those that may result in adverse consequences if not considered." (*Nichols v. Keller, supra,* 15 Cal.App.4th at

pp. 1683–1684.) The court stated that "[t]he attorney need not represent the client on such matters. Nevertheless, the attorney should inform the client of the limitations of the attorney's representation and of the possible need for other counsel." (*Id.* at p. 1684.)

The court's rationale in *Nichols v. Keller* bears emphasis. "The rationale is that, as between the lay client and the attorney, the latter is more qualified to recognize and analyze the client's legal needs." (*Nichols v. Keller, supra,* 15 Cal.App.4th at p. 1684.) "In the context of personal injury consultations between lawyer and layperson, it is reasonably foreseeable the latter will offer a selective or incomplete recitation of the facts underlying the claim; request legal assistance by employing such everyday terms as 'workers' compensation,' 'disability,' and 'unemployment'; and rely upon the consulting lawyer to describe the array of legal remedies available, alert the layperson to any apparent legal problems, and, if appropriate, indicate limitations on the retention of counsel and the need for other counsel. In the event the lawyer fails to so advise the layperson, it is also reasonably foreseeable the layperson will fail to ask relevant questions regarding the existence of other remedies and be deprived of relief through a combination of ignorance and lack or failure of understanding. And, if counsel elects to limit or prescribe his representation of the client, i.e., to a workers' compensation claim only without reference or regard to any third party or collateral claims which the client might pursue if adequately advised, then counsel must make such limitations in representation very clear to his client. Thus, a lawyer who signs an application for adjudication of a workers' compensation claim and a lawyer who accepts a referral to prosecute the claim owe the claimant a duty of care to advise on available remedies, including third party actions." (*Id.* at pp. 1686–1687.)

The reasoning that precludes limiting an attorney's duty to the literal terms of the retention agreement applies as well in the context of a class action. In the former situation, the client reasonably expects the attorney at least to call attention to alternative or additional avenues of relief that might be pursued to obtain full redress for the circumstances giving rise to the retention. The attorney has the duty "to use such skill, prudence and diligence as other members of the profession commonly possess and exercise" in identifying and bringing to the client's attention other courses of action that warrant consideration. (See *Nichols v. Keller, supra,* 15 Cal.App.4th at p. 1685.) If prudence dictates that a claim beyond the scope of the retention agreement be pursued, the client can then consider whether to expand the retention or pursue the additional claim in some other manner. In the context of a class action, both the representative plaintiffs and the absent class members similarly are entitled to assume that their attorneys will consider and bring to

the attention of at least the class representatives additional or greater claims that may exist arising out of the circumstances underlying the certified claims that class members will be unable to raise if not asserted in the pending action. The class members are entitled to assume that their attorneys are attempting to maximize their recovery for the conduct they are challenging and that they are not, without good reason, failing to assert those claims that will do so.

This is not to say that there may not be good reasons for failing to assert a particular claim or make a particular motion or argument, even if doing so would have the potential of increasing recovery. (*Davis v. Damrell* (1981) 119 Cal.App.3d 883, 889 [174 Cal.Rptr. 257]; see also 2 Newberg on Class Actions (4th ed. 2002) § 6.5, p. 503 ["One also must consider whether to join additional claims for different theories of liability leading. to approximately the same relief. Often this joinder may be advantageous when the precise theory of liability that may be applicable is subject to uncertainty or when the class possesses several related claims. On the other hand, sometimes the more prolix the complaint, the more difficult it is to sustain the class action. A longer complaint may afford additional opportunities for challenge by the defendants concerning the impropriety of certifying a class action and may also give rise to feelings by the court of management difficulties. Thus, it would appear that a straightforward, more limited complaint would enjoy a greater likelihood of success for class certification than a prolix complaint."].) Defendants argue that there were good reasons for initially having failed to assert a cause of action under the UCL, and for not moving to amend the complaint when *Cortez, supra,* 23 Cal.4th 163 was decided—after they had already obtained a favorable ruling on the summary adjudication motion and were scheduled to try the issue of damages. Defendants may well be right, but these contentions do not relate to the existence of a duty on the part of the attorneys. They go to whether the attorneys breached or fulfilled their duty. (*Piscitelli v. Friedenberg, supra,* 87 Cal.App.4th at pp. 983–985.)

■ Here, a cause of action under the UCL would have been based on precisely the same practice, and subject to much the same legal analysis, as the certified cause of action under the Labor Code. As explained in *Cortez, supra,* 23 Cal.4th at page 178, the UCL permits restitution of unpaid wages upon a showing that the employer's failure to pay the wages was an unfair business practice under Labor Code section 1194. "[A]ny business act or practice that violates the Labor Code through failure to pay wages is, by definition ([Bus. & Prof. Code,] § 17200), an unfair business practice. It follows that an action to recover wages that might be barred if brought pursuant to Labor Code section 1194 still may be pursued as a UCL action

seeking restitution pursuant to [Business and Professions Code] section 17203 if the failure to pay constitutes a business practice." (*Cortez, supra,* at pp. 178–179.) If not included as part of the *Bell* action, the claim for an additional year of recovery was lost. (see *McCaffrey v. Wiley* (1951) 103 Cal.App.2d 621, 623 [230 P.2d 152]; *Kidd v. Hillman* (1936) 14 Cal.App.2d 507, 510 [58 P.2d 662]; *Feinstein v. Firestone Tire and Rubber Co.* (S.D.N.Y. 1982) 535 F.Supp. 595, 606, fn. 16; *Thompson v. American Tobacco Co., Inc.* (D.Minn. 1999) 189 F.R.D. 544, 550–551.) Class counsel therefore were obliged to consider the advantages and disadvantages to the class of seeking to add a UCL cause of action to their complaint, to bring these considerations to the attention of the class representatives, and to take or recommend such action (including of course the possibility of doing nothing with respect to such an additional claim) as would an attorney using the "skill, prudence and diligence" commonly exercised by attorneys handling such litigation. (*Blain v. Doctor's Co.* (1990) 222 Cal.App.3d 1048, 1062 [272 Cal.Rptr. 250]; *Nichols v. Keller, supra,* 15 Cal.App.4th at p. 1682.) We do not in any way imply that defendants failed to do so here, but having undertaken to represent the class in prosecuting its claim to recover unpaid overtime compensation, they were duty bound to use reasonable care to fully protect the interests of the class in obtaining such recovery. Whether they did so is a question of fact that cannot be disposed of on this demurrer.

2. *Plaintiff was not required to raise the adequacy of defendants' representation in the class action litigation.*

Defendants also contend that the exclusive forum for asserting a challenge to the adequacy of their representation was within the class action itself. They argue that plaintiff cannot collaterally attack class counsel's performance in a separate malpractice action because in certifying the class the class action court already has determined the adequacy of counsel. Determining that class counsel inadequately prosecuted the class members' claims would, in defendants' view, undermine the authority of the class action court and permit class members to relitigate matters that already have been decided.

The authority cited by defendants to support this view is hardly on point and in all events is readily distinguishable. In order to certify a class under the standards prescribed by rule 23 of the Federal Rules of Civil Procedure, to which California state courts look for guidance (*Home Sav. & Loan Assn. v. Superior Court* (1974) 42 Cal.App.3d 1006, 1012 [117 Cal.Rptr. 485]), the court must determine that the named parties "will fairly and

adequately protect the interests of the class." (Fed. Rules Civ. Proc., rule 23(a)(4).) This prerequisite requires the court to determine that there are no conflicts of interest between the representative parties and the class they seek to represent, and that the representatives' attorneys are qualified and willing to prosecute the case competently and vigorously. (*Amchem Products, Inc. v. Windsor, supra,* 521 U.S. at p. 626, fn. 20; *Gonzales v. Cassidy* (5th Cir. 1973) 474 F.2d 67, 72; *Thompson v. American Tobacco Co., Inc., supra,* 189 F.R.D. at p. 550; *Zachery v. Texaco Exploration and Production, Inc.* (W.D.Tex. 1999) 185 F.R.D. 230, 241.) When the trial court is requested to certify a class for the purpose of settlement and/or to determine the fairness and adequacy of a proposed settlement, the court must consider whether class counsel have in fact adequately protected the interests of the class in the conduct of the litigation and in entering the proposed settlement agreement. (See, e.g., *7-Eleven Owners for Fair Franchising v. Southland Corp., supra,* 85 Cal.App.4th at pp. 1146–1147.) When the court has done so after giving objecting class members the opportunity to be heard, the interest in finality provides strong reason for prohibiting dissatisfied class members from collaterally attacking the sufficiency of the settlement in a subsequent action against the same defendant, or in a subsequent malpractice action against class counsel. That is the import of the cases cited by defendants. (E.g., *Thomas v. Albright* (D.D.C. 1999) 77 F.Supp.2d 114, 123 [class members enjoined from prosecuting malpractice action against class counsel for having entered settlement which class action court had approved after rejecting class members' objections that counsel had not fairly and adequately represented their interests]; *Ferguson v. Lieff, Cabraser, Heimann & Bernstein, supra,* 30 Cal.4th at pp. 1043–1044 [class members cannot recover from class counsel punitive damages the claim for which had been relinquished in settlement approved by class action court]; *Epstein v. MCA, Inc.* (9th Cir. 1999) 179 F.3d 641, 648–650; *King v. South Cent. Bell Telephone & Telegraph Co.* (6th Cir. 1986) 790 F.2d 524, 530; *Golden v. Pacific Maritime Ass'n* (9th Cir. 1986) 786 F.2d 1425, 1427–1428; *Laskey v. International Union (UAW)* (6th Cir. 1980) 638 F.2d 954.)[3]

---

[3] Nonetheless, as a matter of due process, class action judgments can bind absent class members only where "the interests of those not present are of the same class as the interests of those who are, and where it is considered that the latter fairly represent the former in the prosecution of the litigation." (*Hansberry v. Lee* (1940) 311 U.S. 32, 41 [85 L.Ed. 22, 61 S.Ct. 115].) Hence, collateral attack upon a judgment entered in a class action on the ground that the interests of absent class members were not adequately represented has long been sanctioned. (*Ibid.; Stephenson v. Dow Chemical Co.* (2nd Cir. 2001) 273 F.3d 249, 258, affd. in part & vacated in part in *Dow Chemical Co. v. Stephenson* (2003) 539 U.S. 111, 112 [156 L.Ed.2d 106, 123 S.Ct. 2161].) There is some disagreement as to whether collateral review of the adequacy of representation should be limited to situations in which the class action court has not passed on the matter, and as to whether collateral review should consider only whether the procedures in the prior litigation afforded the absent class members full and fair opportunity to litigate the issue. (Compare *Epstein v. MCA, Inc., supra,* 179 F.3d at pp. 648–649 with

However, the determination that the class representatives in fact adequately represented the class throughout the litigation is very different from the initial determination made by the court in certifying a class that the representatives will adequately represent the class. (See *Gonzales v. Cassidy, supra,* 474 F.2d at p. 72.) In cases such as *Thomas* and *Ferguson,* the class action court had the opportunity to consider and did consider at the fairness hearing the precise contention concerning the inadequacy of representation asserted by class members in their subsequent malpractice action. Plaintiff's claim here, however, involves no reconsideration of any rulings made by the court in the *Bell* action. There was no occasion for the court in *Bell* to consider whether class counsel were properly discharging their duties to the class by failing to assert the UCL claim, and the class action court never did consider this issue.

In certifying the class, the court determined that counsel were adequate to represent the class, in that the attorneys were competent and able to prosecute the matter diligently. The motion to certify the class undoubtedly was crafted by counsel for the putative class (see, e.g. Cohelan, California Class Actions (2002–2003 ed.) § 7.02, subds. (F), (G), pp. 166–167; 2 Newberg on Class Actions, *supra,* § 6.5, pp. 502–504), and the defendant certainly had no reason to suggest that the scope of the certified claims should be broadened. The certification order did not absolve class counsel of potential liability for negligence in their handling of the claim, nor did the certification order relieve class counsel of the duty to meet the professional standard of care that plaintiff alleges counsel breached in failing to seek the maximum recovery to which the class was entitled for the defendant's conduct challenged in the claim certified for class treatment. Because the class action court never considered whether counsel had adequate reason to forgo the additional UCL claim, the class action court's authority is in no way undermined by permitting this question to be considered in the present malpractice action.

We disagree with defendants that recognizing the duty underlying plaintiff's complaint will "invite bedlam to ensue in the class action arena."

*Stephenson v. Dow Chemical Co., supra,* 273 F.3d at pp. 257–258, fn. 6; see generally *Vermont v. Homeside Lending, Inc., supra,* 826 A.2d at pp. 1016–1017; Woolley, *The Availability of Collateral Attack for Inadequate Representation in Class Suits* (2000) 79 Tex. L.Rev. 383.) However, there is no disagreement that collateral attack must be permitted when the class action court had no opportunity to, and in fact did not, consider the alleged inadequacy in the class representatives' protection of the rights of absent class members. (E.g., *Gonzales v. Cassidy, supra,* 474 F.2d at pp. 72–77; *State v. Homeside Lending, Inc., supra,* 826 A.2d at p. 1017 ["class members must have some remedy if inadequacy develops after they have remained in the class in reliance on the actions of the court and class counsel"].)

Contrary to defendants' argument, we do not suggest that class counsel are "required to raise each and every claim that the facts of a case possibly support." (See pp. 941–942, *ante*.) If a related claim is one that class members reasonably would expect to be asserted, class counsel must respond to the situation in a manner that meets the necessary standard of care. Depending on a great many variables, class counsel may discharge their responsibility by asserting the claim or by bringing the claim to the attention of class members or of the class representatives and deciding that there are good reasons not to assert the additional claim. If class counsel have any question concerning the course that is required by the duty they owe absent class members, the attorneys may seek guidance from the court. It is only if class counsel overlook or mishandle a claim in a manner that competent counsel would not do that they may incur liability to members of the class they have undertaken to represent. Nor do we agree that permitting the enforcement of such a duty will undermine the finality of class action judgments, discourage future class action settlements, or promote forum shopping. Defendants' concern that dissatisfied class plaintiffs will attempt to avoid the jurisdiction of the class action court by filing malpractice actions in a different forum is unwarranted. ■ If the issue on which a malpractice complaint is based has been considered and determined in the class action proceedings, the rulings of the class action court will be binding on members of the class and preclude reconsideration of those matters in another forum. (*Epstein v. MCA, Inc., supra,* 179 F.3d at pp. 649–650; *King v. South Cent. Bell Telephone & Telegraph Co., supra,* 790 F.2d at p. 530.) If the issue was not and reasonably should not have been raised in the class action proceedings, however, there is no reason to preclude its assertion in a subsequent action.

3. *The chronology of events in the Bell action does not negate negligence as a matter of law.*

Finally, defendants argue that even if they were under a duty to consider asserting a UCL claim in *Bell*, the chronology of the litigation establishes as a matter of law that they were not negligent in failing to do so. Defendants contend that prior to the decision of the California Supreme Court in *Cortez* in June 2000, there was no authority to support a claim for unpaid wages under the UCL (see, e.g., *Californians for Population Stabilization v. Hewlett-Packard Co.* (1997) 58 Cal.App.4th 273, 290–291 [67 Cal.Rptr.2d 621]) and that *Cortez* was not decided until long after the certification of the class in May 1998, the expiration of the opt-out period in

September 1998, and the trial court order in April 1999 granting the class members' motion for summary adjudication establishing Farmers' liability.[4] Defendants argue that "[u]nder California law, as well as fundamental principles of due process, a class certification order cannot be modified once there has been a ruling on the merits."

While there may well have been sound strategic reasons for not seeking to amend the complaint after the Supreme Court decided *Cortez*, we cannot agree that the law was such that a motion to amend was doomed to fail. Defendants rely on *Green v. Obledo* (1981) 29 Cal.3d 126, 146 [172 Cal.Rptr. 206, 624 P.2d 256], in which the court reiterated that Federal Rule of Civil Procedure, rule 23(c)(1), applies to California class actions and permits the order certifying the class to be altered or amended only "before the decision on the merits." *Green* explained, however, "[w]e have always recognized that it is desirable for the trial court to retain some measure of flexibility in handling a class action." (*Green, supra,* 29 Cal.3d at p. 148.) When rule 23(c)(1) was amended in 2003, explicitly to permit amendment of an order certifying a class action at any time "before final judgment," the amendment was consistent with a number of federal court decisions that had equated the decision on the merits with the final judgment. (*In re General Motors Corporation Pick-Up Truck Fuel Tank Products Liability Litigation* (3rd Cir. 1955) 55 F.3d 768, 792, fn. 14 ["Under Rule 23(c)(1), the court retains the authority to re-define or decertify the class until the entry of final judgment on the merits."]; *Officers for Justice v. Civil Service Com'n of City and County of San Francisco* (9th Cir. 1982) 688 F.2d 615, 633 ["Rule 23(c)(1) specifically provides that the district court's determination on the maintainability of a class action 'may be conditional, and may be altered or amended before the decision on the merits.' Consequently, before entry of a final judgment on the merits, a district court's order respecting class status is not final or irrevocable, but rather, it is inherently tentative"].) As explained in the advisory committee notes to the 2003 amendment, "This change avoids the possible ambiguity in referring to 'the decision on the merits.' Following a determination of liability, for example, proceedings to define the remedy may demonstrate the need to amend the class definition or subdivide the class. In this setting the final judgment concept is pragmatic. It is not the same as the concept used for appeal purposes, but it should be flexible, particularly in protracted litigation." Accordingly, we cannot say that the class action court necessarily lacked the authority to permit amendment of the complaint or of the class certification order after *Cortez* was decided and before *Bell* went to

---

[4] The Court of Appeal affirmed this order in March 2001, and the trial on the issue of damages began on June 26, 2001. The verdict was returned on July 10, 2001.

trial.[5] There may well have been good reasons for proceeding to trial on the existing pleadings rather than attempting to reopen the scope of the complaint, but this is a question that cannot be decided on the present demurrer. We are in no position to decide as a matter of law that class counsel fulfilled their duties to the class by forgoing its claim for an additional year of recovery.

## Disposition

The judgment is reversed. Plaintiff is to recover his costs on appeal.

McGuiness, P. J., and Parrilli, J., concurred.

A petition for a rehearing was denied July 22, 2004, and the opinion was modified to read as printed above. Respondents' petition for review by the Supreme Court was denied October 23, 2004. Werdegar, J., did not participate therein. Kennard, J., and Moreno, J., were of the opinion that the petition should be granted.

---

[5] If, after the decision in *Cortez*, class counsel decided not to seek leave to amend based upon a well-considered determination that under *Green* such a motion probably would be denied, those facts would of course tend to establish that counsel were not negligent in failing to bring the motion.