Filed 7/1/25; Modified and Certified for Pub. 7/24/25 (order attached)

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

FOURTH APPELLATE DISTRICT

DIVISION THREE

| | |
|---|---|
| EMILY COBOS et al., | |
| Plaintiffs and Appellants, | G063086 |
| v. | (Super. Ct. No. CIVDS1914609) |
| NATIONAL GENERAL INSURANCE COMPANY et al., | O P I N I O N |
| Defendants and Appellants; | |
| STONEWOOD INSURANCE SERVICES, INC., et al., | |
| Defendants and Respondents. | |

Appeal from an order of the Superior Court of San Bernardino County, Joseph T. Ortiz, Judge. Reversed and remanded.

Law Offices of Justin H. King and Justin H. King; The Ehrlich Law Firm, Jeffrey I. Ehrlich and Clinton E. Ehrlich-Quinn for Plaintiffs and Appellants.

Ellingson & Guslani, Stephen M. Hayes, Charles E. Tillage, Tyler R. Austin, and Hayes Scott Bonino for Defendants and Appellants.

No appearance for Defendants and Respondents.

\* \* \*

The named plaintiffs appeal from an order denying their motion for class certification. In the underlying action, plaintiffs alleged defendants National General Insurance Company (National General) and Integon National Insurance Company (Integon) improperly denied plaintiffs' car accident claims and rescinded their automobile insurance policies. The trial court denied plaintiffs' motion to certify a class consisting of 1,032 insureds, in part, because plaintiffs did not present a palpable trial plan for resolving the issue of damages. The court noted plaintiffs admitted most of the available damages were inherently individualized, and the court was concerned plaintiffs wanted to make the case more manageable by forfeiting certain categories of damages. The court concluded class treatment would not be a substantial benefit to the litigants.

On appeal, plaintiffs contend the court abused its discretion by relying on improper legal criteria. They further argue the court's order is not supported by substantial evidence.

In a purported cross-appeal, defendants claim the court erred by finding common questions of law and fact predominated on the issue of liability. We disagree with defendants' contention. But we agree with plaintiffs' assertion that the court relied on improper legal criteria and accordingly reverse the order.

FACTS

I.

THE COMPLAINT

2

Plaintiffs initiated the underlying class action in 2019. The fourth amended complaint alleged plaintiffs were insured under automobile insurance policies issued or underwritten by defendants. After auto accidents, defendants retroactively denied plaintiffs' insurance claims, rescinded their policies, and returned paid premiums based on plaintiffs' failure to disclose members of their household. The insureds were "typically high risk, unsophisticated consumers." Based on these allegations, the complaint asserted 79 causes of action, which included class action claims for insurance bad faith, unfair business practices, and breach of contract.

II.

PLAINTIFFS' MOTION FOR CLASS CERTIFICATION

In 2022, plaintiffs filed a motion seeking certification of the following class: "[A]ll individuals who satisfy the following criteria: (1) the individual was a named insured on a California automobile insurance policy that was underwritten by [Integon]; (2) the individual or another named insured on that individual's insurance policy was involved in an automobile accident while driving an insured vehicle; (3) a post-accident claim was made under the policy for losses from that accident; (4) the individual had his or her insurance policy rescinded between May 14, 2015 and the present; (5) the individual had his or her insurance policy rescinded after a claim was made under the policy; (6) the individual had his or her insurance policy rescinded for failure to disclose household members on the insurance application; and (7) the individual suffered losses because of the policy rescission."

Among other things, plaintiffs argued National General retroactively rescinded automobile insurance policies because plaintiffs did not disclose household members who were fourteen years of age or older on the initial insurance application. Plaintiffs asserted they were not asked about

3

the latter information and were prevented from even making such disclosures on the digital application. Defendants used insurance brokers who were tasked with completing the digital application on behalf of the insured. Finally, plaintiffs claimed the undisclosed household members were not driving at the time of the relevant accidents.

Plaintiffs also provided evidence that National General prepared estimates of the potential payout and the amount of premiums paid by the insured for some of the claims. According to plaintiffs, National General's practice was to rescind a policy for failure to disclose household members if the estimated damage payout exceeded the premiums paid to date. Conversely, National General allegedly did not rescind a policy if the estimated payout on the claim was less than the amount of premiums collected to date.

Defendants opposed the motion, arguing plaintiffs' claims required individualized proof and were not proper for class certification.

III.

THE COURT'S TENTATIVE RULING

In October 2022, the court continued a hearing on the motion and provided a tentative ruling. The court believed plaintiffs demonstrated the proposed class was ascertainable from defendants' own records and numerous (1,032 members). The court also found the claims of the named representatives were identical to the class claims, plaintiffs' counsel was well-qualified to represent the class and had no conflicts of interest, and common questions predominated over individual issues with respect to liability.

But the court believed "[t]he critical issue for certification in this case concern[ed] damages, where individual questions predominate because each class member's damages will differ." Although plaintiffs suggested a

4

bifurcated trial, the court noted plaintiffs had not described the contours of such a trial. The court added that defendants made repair estimates for some claims but not all of them. For the available repair estimates, the court questioned whether they were accurate, overvalued, or undervalued. Defendants also alluded to claims for third-party liability for which there was no evidence presented. Because the insurance bad faith and breach of contract claims implied emotional distress or other consequential damages, the court further questioned, inter alia, how those claims would be handled, whether each class member would need to testify in a damages trial, whether a pre-trial deposition would be needed for each, and whether affirmative defenses would be addressed in the damages phase. Given these concerns, the court requested plaintiffs prepare a trial plan focusing on the proposed damages phase of trial. The case was subsequently transferred to another judge.

IV.

PLAINTIFFS' TRIAL PLAN

A. *Plaintiffs' Proposal*

In 2023, plaintiffs filed a trial plan proposing the class would only seek: (1) withheld collision coverage benefits; and (2) punitive damages. Plaintiffs identified four additional categories of damages they would voluntarily forego: (1) withheld property damage coverage; (2) withheld bodily injury coverage; (3) emotional distress; and (4) consequential damages. Plaintiffs argued class members with the latter damages could opt out of the class.

Plaintiffs further explained the amount of first party benefits owed could be determined from National General's business records. Plaintiffs noted National General produced claim files for 180 of the 1,032 class members during discovery, and 160 of the 180 records (88.9 percent) contained

5

estimates for collision damages. Relying on the work of a private investigator and process server, plaintiffs believed 3 percent of the 180 class members had been sued by third parties. The remainder only had first party collision damages.

Plaintiffs further retained an economic consulting firm to extrapolate data from the 180 claim files to the class as a whole. The consultant believed 84 percent to 92 percent of the class members would have relevant first party damage estimates in defendants' files. In other words, between 866 and 954 class members likely had relevant estimates in their files while 78 to 166 class members would not. For the latter class members with no repair estimates, plaintiffs proposed damages be awarded based on a statistical average of the amounts owed to other class members.

B.  *Defendants' Response*

In response, defendants argued a class action would not be advantageous or promote judicial economy because the certified class would only address two of six different categories of damages. Defendants reasoned it would be "unfair and unduly prejudicial to require anyone that falls within the scope of plaintiffs' pared down class to opt-out in order to protect their right to seek the additional categories of damages . . . ."

Defendants also claimed plaintiffs oversimplified the analysis for collision damages, which was only a small aspect of the available damages. Although plaintiffs suggested collision damages could be determined from the estimates in the claim files, defendants emphasized many of the files did not include estimates and the amount of the repairs on the estimates was not always equal to the amount of collision damages covered by Integon. Defendants further noted plaintiffs' policies included various exclusions and limitations that had to be considered. Finally, defendants argued plaintiffs'

6

proposal to calculate an aggregate value for class-wide damages was improper because collision damages varied widely for each insured and there was an easy way to calculate collision damages for each class member—i.e., the parties could inspect the damaged vehicles and present evidence regarding the value of the damage.

## V.

### THE COURT'S ORDER

In April 2023, the court issued a tentative ruling denying the motion for class certification which was adopted as the ruling of the court. The court noted the prior judge had set forth the reasons supporting class certification and the need for further evidence on the manageability of damages. The court incorporated the analysis contained in the prior October 2022 tentative ruling and then proceeded to focus on the issue of manageability.

First, the court found it "[t]roubling" that plaintiffs "concede[d] . . . much of the damage assessment would need to be individualized and will necessarily need to be determined for each [p]laintiff." Although plaintiff relied on *Moen v. Regents of University of California* (2018) 25 Cal.App.5th 845 to argue an individualized damage assessment was not fatal to class certification, the court found the latter case "stand[s] for the proposition that there is no general rule that [an] individual damage assessment leads to an unmanageable case." For example, the court noted individual damages can easily be determined in wage-and-hour class actions "by simply calculating the number of pay periods to determine a pro rata portion of the overall settlement." The court did not believe *Moen* or other similar cases "indicate[d] that . . . individualized [damage] assessments may not be considered for the purpose of assessing manageability" of a class action.

7

Second, the court emphasized plaintiffs admitted much of the available damages were individualized and cited a portion of the trial plan conceding emotional distress and consequential damages were inherently individualized. Although plaintiffs identified six categories of damages, the court noted plaintiffs sought to make the case more manageable by "simply not seek[ing] damages relating to property damage, bodily injury, or emotional distress, thereby leaving class members apparently without remedy on those aspects of their damages (at least within the proposed class action)." The court concluded: "[T]he trial plan does not set forth a palpable plan for practically resolving damages, and [the] [c]ourt is not convinced that there is a manageable method for this class of 1,032 members." Even if the requested damages were limited as plaintiffs requested, the court did not believe "class treatment would be a substantial benefit to the litigants."

Plaintiffs filed a timely notice of appeal.

DISCUSSION

Plaintiffs contend the court applied improper legal criteria in analyzing the "manageability" and "substantial benefit" aspects of the proposed class action. Plaintiffs also argue the court's order is not supported by substantial evidence. For the reasons below, we agree the court applied improper legal criteria and need not address plaintiffs' alternative substantial evidence argument.

I.

APPLICABLE LAW AND STANDARD OF REVIEW

A class action is authorized by statute "when the question is one of a common or general interest, of many persons, or when the parties are

8

numerous, and it is impracticable to bring them all before the court . . . ." (Code Civ. Proc., § 382.)[1] The party seeking class certification must prove: (1) "a sufficiently numerous, ascertainable class"; (2) "a well-defined community of interest"; and (3) "that certification will provide substantial benefits to litigants and the courts, i.e., that proceeding as a class is superior to other methods." (*Fireside Bank v. Superior Court* (2007) 40 Cal.4th 1069, 1089.) "[T]he 'community of interest requirement embodies three factors: (1) predominant common questions of law or fact; (2) class representatives with claims or defenses typical of the class; and (3) class representatives who can adequately represent the class.'" (*Ibid.*)

Although prominence of common issues is a key consideration, the proponent of class certification also must demonstrate "manageability"—i.e., "litigation of individual issues, including those arising from affirmative defenses, can be managed fairly and efficiently." (*Duran v. U.S. Bank National Assn.* (2014) 59 Cal.4th 1, 29; see *Washington Mutual Bank v. Superior Court* (2001) 24 Cal.4th 906, 922.) Indeed, after common issues are tried, "'and assuming some individual issues remain, each plaintiff must still by some means prove up his or her claim, allowing the defendant an opportunity to contest each individual claim on any ground not resolved in the trial of common issues.'" (*Duran*, at p. 29.) Trial courts accordingly "have the obligation to decertify a class action if individual issues prove unmanageable." (*Ibid.*)

We review an order denying class certification for abuse of discretion. "On review of a class certification order, an appellate court's

_____

[1] All further statutory references are to the Code of Civil Procedure.

9

inquiry is narrowly circumscribed. 'The decision to certify a class rests squarely within the discretion of the trial court, and we afford that decision great deference on appeal, reversing only for a manifest abuse of discretion: "Because trial courts are ideally situated to evaluate the efficiencies and practicalities of permitting group action, they are afforded great discretion in granting or denying certification." [Citation.] A certification order generally will not be disturbed unless (1) it is unsupported by substantial evidence, (2) it rests on improper criteria, or (3) it rests on erroneous legal assumptions.'" (*Brinker Restaurant Corp. v. Superior Court* (2012) 53 Cal.4th 1004, 1022 (*Brinker*).)

'"In determining whether the record contains substantial evidence supporting the ruling, a reviewing court does not reweigh the evidence and must draw all reasonable inferences supporting the court's order.' [Citations.] 'The reviewing court "must examine the trial court's reasons for denying class certification." [Citation.] When reviewing an order denying class certification, appellate courts "consider only the reasons cited by the trial court for the denial, and ignore other reasons that might support denial."'" (*Kizer v. Tristar Risk Management* (2017) 13 Cal.App.5th 830, 841.)

II.

THE COURT RELIED ON IMPROPER LEGAL CRITERIA

Plaintiffs contend the court's decision was based on improper legal criteria. First, plaintiffs argue the court improperly denied certification because damages had to be determined for each class member. Plaintiffs assert individualized proof of damages is not an appropriate basis to deny class certification where a common determination of liability is feasible. Second, plaintiffs alternatively contend the court erred when it found class treatment would not be a substantial benefit because it only considered

10

available damages without weighing other potential advantages of class certification. We agree the court relied on improper criteria to deny class certification.

Here, the court denied certification on the basis that a lot of the damages were individualized, and it concluded it was improper for plaintiffs to forgo certain categories of damages to render the case more manageable. But it is well established that an individual determination of damages does not preclude class certification when common issues of liability predominate. (*Brinker*, *supra*, 53 Cal.4th at p. 1022; *Sav-On Drug Stores, Inc. v. Superior Court* (2004) 34 Cal.4th 319, 332–333; *ABM Industries Overtime Cases* (2017) 19 Cal.App.5th 277, 308.) And, as plaintiffs correctly observe, individuals who are dissatisfied with the potential relief available in a class action have various remedies, including opting out of the class. (*Hicks v. Kaufman & Broad Home Corp.* (2001) 89 Cal.App.4th 908, 925–926.) The court also could have certified a class action to determine liability followed by individual hearings on damages. (*Brinker*, at p. 1022.) Protecting the rights of some individuals did not require the court to block the entire class action from going forward.

The court also denied certification for the additional reason that class treatment would not confer a substantial benefit on the litigants even if the requested damages were limited. The court again appears to have been concerned that some individuals might forfeit potentially available damages if they participated in the proposed class action. At the hearing, the court noted: "I'm concerned that even if we follow plaintiffs' road map and we omit certain – significant damages, that these – it would not result in . . . substantial justice for these defendants, as they would be left unwhole. Perhaps, in large

11

part for many of these defendants."[2] In reaching this conclusion, the court appears to have overlooked a fundamental feature of the class action mechanism: any individual who wishes to pursue additional categories of damages may simply opt out of the class. The possibility that some class members might prefer to assert individualized claims is not a valid basis for denying certification, particularly where class treatment would otherwise promote judicial economy and provide a practical means of redress for common issues. (*See Imperial County Sheriff's Assn. v. County of Imperial* (2023) 87 Cal.App.5th 898, 913 ["the existence of a *potential* conflict among class members does not defeat the superiority of the class mechanism"].) The court also did not give any consideration to the possible benefits of a class action in this case—i.e., "whether the proposed class suit is the only effective way to halt and redress the alleged wrongdoing, or to prevent unjust advantage to [defendants]." (*Linder v. Thrifty Oil Co.* (2000) 23 Cal.4th 429, 446.) "The benefits and burdens of a proposed class action must be evaluated under correct legal standards." (*Ibid.*)

*City of San Jose v. Superior Court* (1974) 12 Cal.3d 447 (*City of San Jose*), which defendants cite, is inapposite. In *City of San Jose*, our Supreme Court held the named plaintiffs failed to adequately represent the class members. (*Id.* at p. 464.) There, the plaintiffs failed "to raise claims reasonably expected to be raised by the members of the class and thus pursue a course which, even should the litigation be resolved in favor of the class, would deprive the class members of many elements of damage." (*Ibid.*) Our Supreme Court did not hold that a class representative must pursue *all*

---

[2] It is unclear whether the court intended to refer to the class members or whether it was expressing concern about potential prejudice to the defendants.

12

conceivable claims. Where, as here, certain damages are inherently individualized and not amenable to class-wide adjudication, a representative's decision not to pursue them does not breach any duty to the class. (See *Janik v. Rudy, Exelrod & Zieff* (2004) 119 Cal.App.4th 930, 942.) To hold otherwise would discourage class actions in cases involving egregious conduct, effectively shielding defendants whose misconduct causes harm. And, as noted *ante*, the trial court can use the class notice procedure to give class members with additional damages the opportunity to opt out of the class. (*Lebrilla v. Farmers Group, Inc.* (2004) 119 Cal.App.4th 1070, 1089 ["anyone dissatisfied with their potential relief in a class action has various remedies, including opting out of the class"]; *Hicks v. Kaufman and Broad Home Corp.*, *supra*, 89 Cal.App.4th at pp. 925–926.)

In short, the court's concerns about damages are not a sufficient basis for denying class certification, and the court did not properly consider the substantial benefit element. In light of our conclusion, we need not reach plaintiffs' alternative argument that the court's findings were not supported by substantial evidence.

III.

DEFENDANTS' CROSS-APPEAL

In a purported cross-appeal, defendants argue the court erred by finding common questions of law and fact predominated on the issue of liability. In other words, defendants essentially seek review of an adverse finding that, if reversed, would provide an alternative basis for affirming the order denying class certification. Defendants' cross-appeal is improper because only parties "aggrieved" by a judgment or order may appeal. (§ 902; see *Jaime Zepeda Labor Contracting, Inc. v. Department of Industrial Relations* (2021) 67 Cal.App.5th 891, 898, fn.7; *Albers v. Los Angeles County* (1965) 62 Cal.2d

13

250, 273.) Regardless, after exercising our discretion to consider the arguments raised in the cross-appeal, we discern no error. The trial court correctly found common questions predominated over individual issues as to liability.

Class certification is appropriate if "'the issues which may be jointly tried, when compared with those requiring separate adjudication, are so numerous or substantial that the maintenance of a class action would be advantageous to the judicial process and to the litigants.'" (*Brinker*, *supra*, 53 Cal.4th at p. 1021.) In conducting this inquiry, the court "must examine the plaintiff's theory of recovery," not to assess its legal merit, but to determine whether the claims can be established on a class-wide basis. (*Id.* at p. 1025.) "The relevant comparison lies between the costs and benefits of adjudicating plaintiffs' claims in a class action and the costs and benefits of proceeding by numerous separate actions—*not* between the complexity of a class suit that must accommodate some individualized inquiries and the absence of any remedial proceeding whatsoever." (*Sav-On Drug Stores, Inc. v. Superior Court*, *supra*, 34 Cal.4th at p. 339, fn. 10.)

Here, the central theory advanced by plaintiffs—that National General's digital application prevented disclosures about household members who were 14 years or older, leading to a standardized basis for policy rescissions—is susceptible to common proof. According to plaintiffs, the design flaw in the software operated uniformly across applications, and defendants issued policies despite the lacking household member data, which they later used as an excuse to rescind the policies. Whether this system defect existed, and whether it operated as plaintiffs allege, are questions resolvable by common evidence.

14

Defendants argue individual issues predominate because even assuming they improperly rescinded the insurance policies, each putative class member still must prove he or she is entitled to benefits under his or her policy. Defendants insist the facts of each accident are unique and need to be compared to the exclusions in each policy. We disagree. An individualized inquiry into coverage is unnecessary. Plaintiffs claim National General's practice was to rescind a policy only if the estimated damage payout exceeded the premiums paid to date. In other words, National General is alleged to have essentially conceded coverage before rescinding the insurance policy and refunding the premiums. Regardless, defendants identify no specific class members with claims that would fall outside coverage under a particular policy exclusion. Rather, they rely on hypothetical scenarios where individual issues might arise. If circumstances warrant, the court may later decertify the class. (Cal. Rules of Court, rule 3.764(a)(4).)

Defendants next emphasize potential individual variations in how applicants interacted with the insurance brokers, including what disclosures were made and what procedures were followed by each broker. But plaintiffs' theory does not require consideration of broker interactions. The central question is whether the digital application's default structure prevented disclosure of the relevant household member information—a feature that could, if proven, establish liability on a class-wide basis. That some applicants may have had additional communications or entered information differently does not defeat predominance. Under plaintiffs' theory, even if brokers wanted to provide the correct household information, they could not because there was no field where it could be included. In any event, "plaintiffs are not required to prove that all class members were identically situated," only that "substantial evidence supports a reasonable assumption that the class members were

15

subject to a common course of conduct." (*Sav-On Drug Stores, Inc. v. Superior Court, supra*, 34 Cal.4th at p. 330.)

Defendants further point to other alleged variations. For example, they claim some insureds renewed their policies and completed renewal forms, which asked the insureds to disclose household members aged 14 or older. Some policies also were issued through Integon's managing general agent, and the related insurance applications "had slight variations." As to the latter, defendants do not identify any consequential differences in the applications. Regardless, these issues could be addressed through subclasses, and the existence of subclasses does not defeat class certification. (*Martinez v. Joe's Crab Shack Holdings* (2014) 231 Cal.App.4th 362, 376–377.) Indeed, plaintiffs proposed a subclass for insureds who had renewed their insurance policies.

Defendants add that some insureds signed driver certification forms. We are not persuaded this variation precludes class certification. Plaintiffs allege National General made underwriting decisions based solely on digital application data. Finally, defendants suggest some insureds had uninsured motorist coverage, which could affect whether any misrepresentations about their household members were material. But plaintiffs assert the class members did not misrepresent information about household members because the application never asks for disclosure. The issue of materiality would arise only if plaintiffs were to lose on the threshold liability question—an issue that can be resolved on common proof.

For the foregoing reasons, the court did not err by concluding common questions predominated regarding liability.

16

## DISPOSITION

The order denying class certification is reversed. On remand, the court is directed to certify, at minimum, a liability-only class. The court is also directed to consider whether any subclasses are necessary. Plaintiffs shall recover their costs incurred on appeal.


SANCHEZ, J.

WE CONCUR:


MOORE, ACTING P. J.


MOTOIKE, J.

Filed 7/24/25

**CERTIFIED FOR PUBLICATION**

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

FOURTH APPELLATE DISTRICT

DIVISION THREE

| | |
|---|---|
| EMILY COBOS et al., | |
| Plaintiffs and Appellants, | G063086 |
| v. | (Super. Ct. No. CIVDS1914609) |
| NATIONAL GENERAL INSURANCE COMPANY et al., | ORDER GRANTING REQUEST FOR PUBLICATION; MODIFYING OPINION; DENYING PETITION FOR REHEARING; NO CHANGE IN JUDGMENT |
| Defendants and Appellants; | |
| STONEWOOD INSURANCE SERVICES, INC., et al., | |
| Defendants and Respondents. | |

The Arkin Law Firm and Shernoff Bidart Echeverria LLP have requested that our opinion, filed on July 1, 2025, be certified for publication. It appears that our opinion meets the standards set forth in California Rules of Court, rule 8.1105(c). The requests are GRANTED. The opinion is ordered published in the Official Reports as modified by the following order:

It is ordered that the opinion filed July 1, 2025, be modified as follows:

On page 4, first paragraph, third sentence, the word "allegedly" is added so that the sentence reads:

"Defendants allegedly used insurance brokers who were tasked with completing the digital application on behalf of the insured."

There is no change in the judgment.

The petition for rehearing filed by defendants National General Insurance Company and Integon National Insurance Company is DENIED.

SANCHEZ, J.

WE CONCUR:

MOORE, ACTING P. J.

MOTOIKE, J.

2