[No. B209863. Second Dist., Div. Seven. July 1, 2009.]

RON MARTORANA, Plaintiff and Appellant, v.
MARLIN & SALTZMAN et al., Defendants and Respondents.

686

## COUNSEL

Law Offices of Bennett Rolfe and Bennett Rolfe for Plaintiff and Appellant.

Marlin & Saltzman, Louis M. Marlin and Stanley D. Saltzman for Defendants and Respondents Marlin & Saltzman, Louis M. Marlin and Stanley D. Saltzman.

Nemecek & Cole, Jonathan B. Cole, Mark Schaeffer and Janette S. Bodenstein for Defendants and Respondents Rex Parris Law Firm, R. Rex Parris, Robert Parris, Schwartz Daniels & Bradley, Arnold Schwartz and Marcus Bradley.

Seyfarth Shaw, Andrew M. Paley and Laura Reathaford for Defendant and Respondent Allstate Insurance Company.

**OPINION**

**ZELON, J.**—Appellant Ron Martorana (Martorana) was a class member in a prior wage-and-hour class action filed against his former employer, respondent Allstate Insurance Company (Allstate), by counsel from several law firms—respondents Marlin & Saltzman, Louis M. Marlin, and Stanley D. Saltzman, and respondents Rex Parris Law Firm, R. Rex Parris, Robert Parris, Schwartz Daniels & Bradley, Arnold Schwartz, and Marcus Bradley (collectively Class Counsel). A settlement of the class action was approved by the Los Angeles County Superior Court, but Martorana did not recover any portion of the settlement because he failed to timely submit a claim form. Martorana then filed the instant action against Allstate and Class Counsel (Respondents), alleging that Respondents were negligent in failing to take action to contact Martorana before the claim filing deadline to determine why he had not filed a claim form and to make sure that he was aware of the need to timely do so. Respondents filed demurrers to Martorana's complaint, which the trial court sustained.

Martorana now appeals the trial court's orders sustaining the demurrers of Class Counsel and granting Allstate's request for sanctions pursuant to Code of Civil Procedure section 128.7.[1] For the reasons set forth below, we hold that the trial court did not err in sustaining Class Counsel's demurrers without leave to amend, but did err in awarding sanctions to Allstate.

## FACTUAL BACKGROUND AND PROCEDURAL HISTORY

### I. *The Underlying Class Action*

On November 27, 2000, Class Counsel filed a class action suit against Allstate on behalf of all current and former claims adjusters, seeking overtime pay and related penalties under the California Labor Code (*Sekly v. Allstate Insurance Co.* (Super. Ct. L.A. County, 2005, No. BC240813) (the *Sekly* action)). After several years of litigation, the parties in the *Sekly* action agreed to a class action settlement totaling $120 million. As a senior claims adjuster for Allstate, Martorana was a member of the class and was entitled to receive approximately $65,000 as his portion of the settlement provided that he submit a timely claim form.

On September 13, 2005, the trial court in the *Sekly* action granted preliminary approval of the settlement. In so doing, the court approved the parties' proposed settlement notice, which the claims administrator was

---

[1] Unless otherwise stated, all further statutory references are to the Code of Civil Procedure.

required to send, along with a claim form and a request for exclusion form, to each class member at his or her last known address by first-class mail. The settlement notice provided that class members had 75 days in which to submit claim forms or exclusion requests, and 30 days in which to file and serve written objections. Any claim submitted by December 7, 2005, was to be deemed timely, and any claim submitted between December 7, 2005, and February 28, 2006, could be approved for payment in the discretion of a referee selected by the parties. However, any claim submitted after February 28, 2006, was to be rejected as untimely regardless of the reason for the late filing. On November 7, 2005, following a fairness hearing, the trial court in the *Sekly* action granted final approval of the class action settlement, finding that the settlement was "fair and adequate and . . . the result of arms length negotiations between the parties."

In accordance with the settlement agreement, the claims administrator mailed the judicially approved settlement notice to all class members, including Martorana. Martorana does not allege that he failed to receive the settlement notice, or the accompanying claim form, within the claim filing period. Rather, he alleges that he did not submit a claim form until some time after February 28, 2006, because he had been diagnosed with prostate cancer and was experiencing the physical effects of his diagnosis and treatment. Because Martorana did not timely submit a claim, he did not receive any portion of the *Sekly* action settlement.

## II. *The Negligence and Malpractice Action*

On October 12, 2007, Martorana filed the instant action against Allstate and Class Counsel. His original complaint alleged a negligence claim against both Allstate and Class Counsel and a legal malpractice claim solely against Class Counsel. In his original complaint, Martorana asserted that Allstate and Class Counsel owed a duty to the class as a whole to establish a settlement notice procedure whereby class members who had not responded to the notice would be contacted prior to the claim filing deadline to ascertain the reason why they had not submitted a timely claim form. Martorana further asserted that Class Counsel owed a duty to Martorana individually to take reasonable steps to contact him about his failure to file a claim and to make sure that his claim form was timely submitted.

Allstate and Class Counsel demurred to Martorana's original complaint. In its demurrer, which was both filed and served on February 13, 2008, Allstate also sought monetary sanctions against Martorana and his attorney pursuant

to section 128.7. In support of the request for sanctions, Allstate's attorney, Andrew Paley (Paley), submitted a declaration attaching his prior correspondence with Martorana's counsel. In a January 8, 2008 letter to Martorana's attorney, Paley stated that the action against Allstate was frivolous because Allstate owed no duty of care and that Allstate would seek sanctions against both Martorana and his counsel under section 128.7 unless they dismissed the complaint with prejudice. On January 29, 2008, Martorana's attorney responded via e-mail, summarily rejecting Allstate's request for a dismissal.

On March 20, 2008, the trial court sustained Allstate's demurrer to the original complaint without leave to amend and granted its request for sanctions in the amount of $4,800. In awarding sanctions against both Martorana and his attorney, the trial court noted that the complaint against Allstate, who had been an adverse party in the prior class action, "was so completely devoid of merit that the court finds it was filed to harass, annoy, or vex Allstate." The trial court also sustained Class Counsel's demurrers to the original complaint, but granted Martorana leave to amend the cause of action for legal malpractice. The court rejected Class Counsel's argument that judicial approval of a class action settlement automatically absolved attorneys for the class of any malpractice liability. The court reasoned that Class Counsel conceivably could be liable if they had an active role in Martorana's failure to timely file a claim. Because it was "unclear to what extent counsel may have been responsible, if at all, for Martorana's failure," the court concluded that Martorana "must allege more facts . . . on this issue."

On April 9, 2008, Martorana filed a first amended complaint, asserting a single cause of action against Class Counsel for legal malpractice. In his amended complaint, Martorana alleged that Class Counsel owed him a duty of care because they knew he was a class member and how to contact him, knew that he had not responded to the settlement notice by filing either a claim form or an exclusion request, and knew that his overtime claim against Allstate would be released if he did not timely submit a response. Martorana further alleged that Class Counsel breached its duty by (1) failing to negotiate a procedural mechanism in the settlement agreement whereby Class Counsel would be notified before the claim filing deadline as to which class members had not yet responded, and (2) failing to contact Martorana directly about his need to timely file a claim form. Martorana also asserted that he would have submitted a claim form before the filing deadline had he been contacted by Class Counsel and made aware of the need to do so.

Class Counsel also demurred to Martorana's first amended complaint, and on May 29, 2008, the trial court heard the demurrers. After oral argument by counsel, Martorana sought leave to address the court directly, which was granted. Martorana advised the court that he was diagnosed with prostate

cancer around the time that the settlement notices were sent and that he had been distraught by the diagnosis. Martorana also stated that he "didn't pay the close attention that [he] should have," and that his failure to timely submit a claim form was "a clerical error" and "inadvertence."

On May 29, 2008, the trial court sustained Class Counsel's demurrers without leave to amend. The court concluded that Class Counsel owed Martorana a duty of care because there was an attorney-client relationship between the parties, but that Class Counsel did not breach their duty. With respect to Class Counsel's role in crafting the settlement agreement, the court stated that the settlement notice procedure had been judicially approved and complied with due process, and thus, "the allegation that Class Counsel drafted the procedures, without more, cannot form the basis of a breach of the duty." With the respect to Class Counsel's failure to contact Martorana to make sure he submitted a claim form, the court noted that there was no allegation that Class Counsel knew that Martorana could not timely file a claim due to his illness and failed to help him. The court further found that "it would defeat the purpose of mass notification to a large number of class members if, after written notice, Class Counsel were required to follow up . . . [with] every class member who neglected to file a timely claim. Absent an allegation that Class Counsel[] played a role in Plaintiff's failure to submit a timely claim, the FAC [first amended complaint] must fail." The trial court thereafter entered a judgment of dismissal as to all Respondents.

On July 31, 2008, Martorana filed a timely notice of appeal. In his appeal, Martorana challenges the trial court's order sustaining Class Counsel's demurrers to his first amended complaint, and the order granting Allstate's request for monetary sanctions.

## DISCUSSION

### I. Class Counsel's Demurrers to the First Amended Complaint

#### A. Governing Legal Principles

In reviewing the sufficiency of a complaint against a demurrer, we "treat[] the demurrer as admitting all material facts properly pleaded," but we do not "assume the truth of contentions, deductions or conclusions of law." (*Aubry v. Tri-City Hospital Dist.* (1992) 2 Cal.4th 962, 967 [9 Cal.Rptr.2d 92, 831 P.2d 317].) We liberally construe the pleading to achieve substantial justice between the parties, giving the complaint a reasonable interpretation and reading the allegations in context. (§ 452; *Schifando v. City of Los Angeles* (2003) 31 Cal.4th 1074, 1081 [6 Cal.Rptr.3d 457, 79 P.3d 569].) When a demurrer is sustained, we must determine de novo whether the complaint

alleges facts sufficient to state a cause of action under any legal theory. (*McCall v. PacifiCare of Cal., Inc.* (2001) 25 Cal.4th 412, 415 [106 Cal.Rptr.2d 271, 21 P.3d 1189].) Moreover, when a demurrer is sustained without leave to amend, we also must determine whether there is a reasonable possibility that the defect can be cured by amendment. (*Blank v. Kirwan* (1985) 39 Cal.3d 311, 318 [216 Cal.Rptr. 718, 703 P.2d 58].) If it can be cured, the trial court has abused its discretion in sustaining the demurrer without leave to amend and we reverse. (*Ibid.*) If it cannot be cured, there has been no abuse of discretion and we affirm. (*Ibid.*) The burden of showing that a reasonable possibility exists that the complaint can be cured by amendment rests squarely with the plaintiff. (*Ibid.*)

■ To state a cause of action for legal malpractice, a plaintiff must plead "(1) the duty of the attorney to use such skill, prudence, and diligence as members of his or her profession commonly possess and exercise; (2) a breach of that duty; (3) a proximate causal connection between the breach and the resulting injury; and (4) actual loss or damage resulting from the attorney's negligence." (*Coscia v. McKenna & Cuneo* (2001) 25 Cal.4th 1194, 1199 [108 Cal.Rptr.2d 471, 25 P.3d 670].) Whether an attorney sued for malpractice owed a duty of care to the plaintiff "is a question of law and depends on a judicial weighing of the policy considerations for and against the imposition of liability under the circumstances." (*Goodman v. Kennedy* (1976) 18 Cal.3d 335, 342 [134 Cal.Rptr. 375, 556 P.2d 737].) In addressing the issue of breach, " 'the crucial inquiry is whether [the attorney's] advice was so legally deficient when it was given that he [or she] may be found to have failed to use "such skill, prudence, and diligence as lawyers of ordinary skill and capacity commonly possess and exercise in the performance of the tasks which they undertake." [Citation.]' [Citations.]" (*Dawson v. Toledano* (2003) 109 Cal.App.4th 387, 397 [134 Cal.Rptr.2d 689].)

In this case, the parties do not dispute that Class Counsel owed a duty of care to the class as a whole to represent all class members in the *Sekly* action with such skill, prudence, and diligence as attorneys of ordinary skill and capacity commonly possess and exercise in the performance of their tasks. (*Janik v. Rudy, Exelrod & Zieff* (2004) 119 Cal.App.4th 930, 936–937 [14 Cal.Rptr.3d 751] (*Janik*); see also *7-Eleven Owners for Fair Franchising v. Southland Corp.* (2000) 85 Cal.App.4th 1135, 1159 [102 Cal.Rptr.2d 777] [class counsel has duty to adequately represent the class as a whole]; *Cal Pak Delivery, Inc. v. United Parcel Service, Inc.* (1997) 52 Cal.App.4th 1, 11–12 [60 Cal.Rptr.2d 207] [attorney-client relationship between class counsel and class members is created by certification of the class].) The issue before this court is whether Martorana can state a cause of action against Class Counsel for a breach of that duty of care based on the allegations in the first amended complaint. Martorana contends that he has pleaded an actionable malpractice claim under two possible theories. First, he asserts that Class Counsel can be

liable for failing to negotiate a settlement notice procedure whereby counsel would be notified before the claim filing deadline as to which class members had not yet responded, so that they could then contact those members to determine why they had not filed claims. Second, Martorana claims that Class Counsel can be liable for failing to contact him specifically once counsel knew or should have known that he had not submitted a timely claim form. As set forth below, however, we conclude that Martorana has failed to state a cause of action under either theory.

## B. Failure to Negotiate a Different Settlement Notice Procedure

■ Martorana's first theory of liability fails because he is collaterally estopped from arguing that Class Counsel breached their duty of care to the class by failing to negotiate a different settlement notice procedure than that approved by the trial court in the *Sekly* action. The doctrine of collateral estoppel provides that a party to an action, or one in privity with a party, is barred from subsequently relitigating issues actually litigated and finally decided in a prior proceeding. (*United States Golf Assn. v. Arroyo Software Corp.* (1999) 69 Cal.App.4th 607, 615 [81 Cal.Rptr.2d 708].) " 'Traditionally, collateral estoppel has been found to bar relitigation of an issue decided at a previous proceeding "if (1) the issue necessarily decided at the previous [proceeding] is identical to the one which is sought to be relitigated; (2) the previous [proceeding] resulted in a final judgment on the merits; and (3) the party against whom collateral estoppel is asserted was a party or in privity with a party at the prior [proceeding]." . . .' [Citations.]" (*People v. Carter* (2005) 36 Cal.4th 1215, 1240 [32 Cal.Rptr.3d 838, 117 P.3d 544].) Apart from these threshold requirements, a court must consider the public policies underlying the collateral estoppel doctrine to determine if the facts of the case merit its application. (*Lucido v. Superior Court* (1990) 51 Cal.3d 335, 342–343 [272 Cal.Rptr. 767, 795 P.2d 1223].)

■ In asserting that Class Counsel should have negotiated a different settlement notice procedure, Martorana is attempting to challenge the judicially approved notice procedure in the *Sekly* action, and thus, to relitigate an issue that was actually decided in the prior class action proceeding. Before the trial court in the *Sekly* action could grant final approval of the settlement, it was required to review the settlement notice to class members for compliance with due process. (*Phillips Petroleum Co. v. Shutts* (1985) 472 U.S. 797, 811–812 [86 L.Ed.2d 628, 105 S.Ct. 2965].) This included evaluating the content of the notice to ensure, among other things, that it was " 'reasonably

calculated, under all the circumstances, to apprise interested parties of the pendency of the action and afford them an opportunity to present their objections.' [Citations.]" (*Id.* at p. 812.) However, provided that the settlement notice satisfied due process, the trial court had broad discretion to determine the specific form and content of the notice and to decide whether notice by first-class mail, without any further followup by Class Counsel, was legally sufficient. Indeed, a trial court in a class action " 'has virtually complete discretion as to the manner of giving notice to class members.' [Citation.]" (*7-Eleven Owners for Fair Franchising v. Southland Corp., supra,* 85 Cal.App.4th at p. 1164; see also *Wershba v. Apple Computer Inc.* (2001) 91 Cal.App.4th 224, 252 [110 Cal.Rptr.2d 145] [trial court has broad discretion in approving class action notice].)

When the trial court granted final approval of the settlement in the *Sekly* action, it necessarily found that the notice procedure agreed upon by the parties complied with the requirements of due process and that the settlement itself was fair, adequate, and reasonable. To the extent that Martorana had any objection to either the settlement or the notice procedure, he had an opportunity to file a written objection with the trial court and to appear at the fairness hearing. While Martorana asserts on appeal that he was unaware that a final approval hearing was to be held, he never alleged in his complaint that he failed to receive timely notice of the settlement, which included instructions for filing an objection and appearing at the fairness hearing. In fact, at the hearing on Class Counsel's demurrers, Martorana conceded that he did receive the settlement notice and related forms, but due to his illness, he "didn't pay the close attention that [he] should have."

■ Martorana contends that judicial approval of a class action settlement does not, as a matter of law, bar a separate malpractice suit against the attorneys for the class. He relies primarily on the decision in *Janik, supra,* 119 Cal.App.4th 930, in which class members in an underlying class action suit brought a malpractice action against the attorneys who represented the class for failing to assert a claim that could have produced a greater recovery. The attorneys demurred to the complaint, arguing that the duty they owed to the class was limited to pursuing the claims approved by the class action court in its certification order, and that the plaintiffs could not collaterally attack the adequacy of the representation in a subsequent malpractice suit. (*Id.* at pp. 937, 943.) Rejecting these arguments, the First Appellate District held that the attorneys were required to consider all appropriate related claims beyond those set forth in the certification order, and that the plaintiffs were not precluded from challenging counsel's alleged failure to do so because that issue had not been decided in the class action. (*Id.* at p. 945 ["There was no occasion for the court in the [class action] to consider whether class counsel were properly discharging their duties to the class by failing to assert the [related] claim, and the class action court never did consider this issue."].)

Notably, however, the court in *Janik* never suggested that class members could relitigate those issues actually ruled on in a prior class action proceeding by bringing a subsequent malpractice lawsuit against class counsel. To the contrary, the court recognized that "[i]f the issue on which a malpractice complaint is based has been considered and determined in the class action proceedings, the rulings of the class action court will be binding on members of the class and preclude reconsideration of those matters in another forum. [Citations.]" (*Id.* at p. 946.) That is the case here, as Martorana seeks to challenge the content of the settlement notice negotiated by Class Counsel, which the trial court in the *Sekly* action specifically considered and approved.

Although not binding on this court, several federal decisions also support the application of collateral estoppel in this case. For instance, in *Golden v. Pacific Maritime Assn.* (9th Cir. 1986) 786 F.2d 1425, 1427–1428, the Ninth Circuit concluded that the plaintiffs in a prior class action were collaterally estopped from suing their former counsel for malpractice and fraud because the plaintiffs had objected to the attorneys' representation at the fairness hearing, and accordingly, had a full and fair opportunity to litigate the issues on which their later action was based. Similarly, in *Laskey v. International Union (UAW)* (6th Cir. 1981) 638 F.2d 954, the Sixth Circuit held that class members in a prior class action could not raise the adequacy of class counsel's representation in a subsequent malpractice suit because they "had the opportunity to object to the legal representation at the prior settlement hearing" at which the class action court found that the attorneys had adequately represented the class. (*Id.* at p. 956; see also *Zimmer Paper Products Inc. v. Berger & Montague, P.C.* (3d Cir. 1985) 758 F.2d 86, 93 [class counsel did not breach fiduciary duty to class members in following customary and court-approved procedure for providing notice of settlement through first-class mail and publication]; *Thomas v. Albright* (D.D.C. 1999) 77 F.Supp.2d 114, 121–123 [class members enjoined from pursuing malpractice action against class counsel for entering into settlement agreement which class action court approved after rejecting class members' objections that counsel had not adequately represented their interests].)

■ With respect to the public policies underlying collateral estoppel, application of the doctrine is particularly warranted here. As noted by the federal court in *Thomas v. Albright, supra,* 77 F.Supp.2d at page 123, a class action court "expects that its findings on the fairness of a settlement, adequacy of notices, and adequacy of class representation are final and have the force of law." Allowing Martorana to assert a malpractice claim challenging the adequacy of a judicially approved notice of settlement would undermine the authority of the class action court to determine the form and content of the notice to class members and would result in the relitigation of issues that were decided in the prior class action proceeding. Martorana had a full and fair opportunity to object to the settlement notice in the *Sekly* action

before it was approved by the trial court. He is therefore precluded from pursuing a malpractice claim against Class Counsel based on the theory that counsel breached the duty of care owed to the class by failing to negotiate a different notice procedure.

### C. *Failure to Contact Martorana to Make Sure He Filed a Claim Form*

Martorana's alternative theory of liability likewise lacks merit. He contends that, regardless of the notice procedure set forth in the settlement agreement, Class Counsel breached their duty of care to Martorana specifically by failing to make reasonable efforts to contact him before the claim filing deadline to ensure that he was aware of the need to timely submit a claim form. Yet as the trial court recognized, Martorana did not allege that Class Counsel had any active role in his failure to file a claim, such as by affirmatively misrepresenting the claim filing deadline or by offering to help him file a claim form and then not doing so. In fact, there were no allegations in the first amended complaint to support a theory that Class Counsel had any knowledge that Martorana was ill or otherwise incapable of submitting a timely response. Instead, Martorana suggests that Class Counsel should have followed up with him simply because his allocated share of the settlement was fairly sizable at $65,000. But Martorana does not cite any case law to support this theory of liability, nor are we aware of any authority imposing such an obligation on counsel in a class action suit.

Moreover, as the trial court noted, it would defeat the purpose of mass notification to class members if attorneys for the class had an obligation, beyond the duty of due care, to follow up with each and every class member who failed to file a timely claim form. Additionally, the threat of a malpractice action could discourage future class counsel from attempting to settle class action claims if the attorneys could not rely upon the finality of the trial court's findings regarding the fairness of the settlement and adequacy of the notice procedure. We do not suggest that attorneys representing a class can never be liable for legal malpractice based on their actions in settling a class action or in carrying out the court's settlement orders. In this case, however, Martorana is seeking to pursue a malpractice claim against Class Counsel based solely on their failure to provide more notice to him than was required by the judicially approved settlement notice procedure. Based on the allegations in Martorana's complaint, such conduct by Class Counsel cannot support a malpractice action as a matter of law.

In sum, Martorana's first amended complaint failed to plead sufficient facts to constitute a cause of action against Class Counsel under any legal theory. There is also no basis for concluding that any further amendment could cure

the defects in the complaint, as Martorana's counsel conceded at the hearing on the demurrers that no additional facts could be alleged. (*Rakestraw v. California Physicians' Service* (2000) 81 Cal.App.4th 39, 44 [96 Cal.Rptr.2d 354] ["Where the appellant offers no allegations to support the possibility of amendment and no legal authority showing the viability of new causes of action, there is no basis for finding the trial court abused its discretion when it sustained the demurrer without leave to amend."]; *Vaillette v. Fireman's Fund Ins. Co.* (1993) 18 Cal.App.4th 680, 685 [22 Cal.Rptr.2d 807, 23 Cal.Rptr.2d 807] ["[L]eave to amend should *not* be granted where . . . amendment would be futile."].) Accordingly, the trial court did not err in sustaining the demurrers of Class Counsel without leave to amend.

## II. *Allstate's Request for Sanctions*

Martorana also appeals the trial court's award of sanctions under section 128.7. Among other arguments, Martorana asserts that the trial court erred in ordering sanctions against him and his attorney because Allstate did not comply with the "safe harbor" provisions of section 128.7, subdivision (c)(1) by serving a separate motion for sanctions 21 days before filing it with the court.[2] We generally review orders for monetary sanctions under the deferential abuse of discretion standard. (*Guillemin v. Stein* (2002) 104 Cal.App.4th 156, 167 [128 Cal.Rptr.2d 65].) However, the proper interpretation of a statute relied upon by the trial court as its authority to award sanctions is a question of law, which we review de novo. (*Vidrio v. Hernandez* (2009) 172 Cal.App.4th 1443, 1452 [92 Cal.Rptr.3d 178]; *In re Marriage of Feldman* (2007) 153 Cal.App.4th 1470, 1479 [64 Cal.Rptr.3d 29].)

Under section 128.7, "[a] party seeking sanctions must follow a two-step procedure. First, the moving party must serve on the offending party a motion for sanctions. Service of the motion on the offending party begins a [21]-day[3] safe harbor period during which the sanctions motion may not be filed with the court. During the safe harbor period, the offending party may withdraw the improper pleading and thereby avoid sanctions. If the pleading is withdrawn, the motion for sanctions may not be filed with the court. If the pleading is not withdrawn during the safe harbor period, the motion for sanctions may then be filed." (*Malovec v. Hamrell* (1999) 70 Cal.App.4th 434, 440 [82 Cal.Rptr.2d 712].)

---

[2] Section 128.7, subdivision (c)(1) provides, in pertinent part, that "[a] motion for sanctions under this section shall be made separately from other motions or requests," and that "[n]otice of motion shall be served as provided in Section 1010, but shall not be filed with or presented to the court unless, within 21 days after service of the motion, or any other period as the court may prescribe, the challenged paper, claim, defense, contention, allegation, or denial is not withdrawn or appropriately corrected."

[3] The 2002 amendments to section 128.7 changed the safe harbor period from 30 days to 21 days. (Stats. 2002, ch. 491.)

■ The statutory scheme is aimed at deterrence. "[S]anctions under section 128.7 are not designed to be punitive in nature but rather to promote compliance with statutory standards of conduct." (*Cromwell v. Cummings* (1998) 65 Cal.App.4th Supp. 10, 14 [76 Cal.Rptr.2d 171].) "The purpose of the safe harbor provisions is to permit an offending party to avoid sanctions by withdrawing the improper pleading during the safe harbor period. [Citation.] This permits a party to withdraw a questionable pleading without penalty, thus saving the court and the parties time and money litigating the pleading as well as the sanctions request." (*Malovec v. Hamrell, supra,* 70 Cal.App.4th at p. 441.) Therefore, to comply with the safe harbor provisions of section 128.7, a party may not bring a motion for sanctions unless there is some action that the offending party may take to withdraw the improper pleading. (*Goodstone v. Southwest Airlines Co.* (1998) 63 Cal.App.4th 406, 424 [73 Cal.Rptr.2d 655].)

In this case, it is undisputed that Allstate both filed and served its request for section 128.7 sanctions on February 13, 2008, as part of its demurrer to Martorana's original complaint. Allstate accordingly failed to satisfy the statutory requirements of section 128.7, subdivision (c)(1) because it did not make its request for sanctions separately from other motions and did not serve its request at least 21 days before filing it with the trial court. On appeal, Allstate raises two arguments about its noncompliance with the statute's safe harbor provisions. First, Allstate claims that Martorana waived his right to challenge the award of sanctions on procedural grounds by failing to raise any such objection before the trial court. Second, Allstate asserts that Martorana cannot demonstrate that he was prejudiced by the alleged procedural error because he received more than 21 days notice of Allstate's intent to seek sanctions through the correspondence from its counsel. We reject both of Allstate's arguments.

■ With respect to the issue of waiver, it is true that an appellate court ordinarily will not consider an alleged erroneous ruling where an objection could have been, but was not, raised before the trial court. (*In re Marriage of Nelson* (2006) 139 Cal.App.4th 1546, 1558 [44 Cal.Rptr.3d 52]; *JRS Products, Inc. v. Matsushita Electric Corp. of America* (2004) 115 Cal.App.4th 168, 178 [8 Cal.Rptr.3d 840].) However, this rule does not apply when the theory raised for the first time on appeal is a pure question of law applied to undisputed facts. (*Barnes v. Department of Corrections* (1999) 74 Cal.App.4th 126, 129–130 [87 Cal.Rptr.2d 594] (*Barnes*); see also *Rowe v. Exline* (2007) 153 Cal.App.4th 1276, 1287–1288 [63 Cal.Rptr.3d 787] ["[E]ven where a legal argument was not raised in the trial court, we have discretion to consider it where, as here, it involves a legal question applied to undisputed

facts.".) For instance, the respondent in *Barnes* also argued that the appellant was precluded from challenging a sanctions award on grounds of noncompliance with section 128.7's safe harbor provisions because the issue was never raised in the trial court. (*Barnes, supra,* at p. 129.) The Fifth Appellate District rejected the respondent's argument, noting that the "rule does not apply when the new theory on appeal is a pure question of law with no factual disputes." (*Id.* at p. 130.) This exception to the traditional rule on waiver applies with equal force here. There is no factual dispute that Allstate filed and served its request for sanctions on the same date. Martorana's argument that Allstate failed to comply with the safe harbor requirements of section 128.7 thus presents a pure question of law which may be addressed on appeal.

■ With respect to the issue of prejudice, Allstate cannot show that its attorney's January 8, 2008 correspondence to Martorana's counsel constituted sufficient notice to satisfy the safe harbor requirements of section 128.7. A party does not comply with the notice provisions of section 128.7 simply by sending a letter of its intent to seek sanctions to the offending party. (*Barnes, supra,* 74 Cal.App.4th at p. 136 ["informal notice of an intent to seek sanctions in the future cannot serve as a substitute to the requirements set forth in section 128.7 for a formal noticed motion"]; *Cromwell v. Cummings, supra,* 65 Cal.App.4th at p. Supp. 15 ["[a]pplication of the doctrine of substantial compliance would be inconsistent with the plain language of the 'safe harbor' provision . . ."].) Moreover, contrary to Allstate's claim, Martorana did not have to prove that he would have dismissed his complaint had Allstate provided a copy of its motion for sanctions with the correspondence to his counsel. Adequate notice prior to the imposition of sanctions is not only mandated by statute, but also by the due process clauses of the state and federal Constitutions. (*In re Marriage of Reese & Guy* (1999) 73 Cal.App.4th 1214, 1220 [87 Cal.Rptr.2d 339].) The notice requirements of section 128.7, subdivision (c)(1) were therefore mandatory, and neither the parties nor the trial court in this matter were permitted to disregard them. (*Barnes, supra,* at p. 131; *Malovec v. Hamrell, supra,* 70 Cal.App.4th at p. 441; *Goodstone v. Southwest Airlines Co., supra,* 63 Cal.App.4th at p. 424.)

In sum, it is clear that Allstate did not satisfy the safe harbor requirements of section 128.7, subdivision (c)(1) in seeking monetary sanctions against Martorana and his counsel. Because the failure to comply with section 128.7's safe harbor provisions precludes an award of sanctions, the trial court's order awarding sanctions to Allstate must be reversed.[4]

---

[4] In light of our conclusion that the award of sanctions must be reversed for Allstate's failure to comply with the notice requirements of section 128.7, subdivision (c)(1), we need not address Martorana's other arguments regarding the sanctions order.

## DISPOSITION

The order sustaining the demurrers of Class Counsel to Martorana's first amended complaint without leave to amend is affirmed. The order awarding Allstate sanctions against Martorana and his attorney is reversed. Class Counsel shall recover their costs on appeal from Martorana. Martorana shall recover his costs on appeal from Allstate.

Perluss, P. J., and Woods, J., concurred.

On July 16, 2009, the opinion was modified to read as printed above.