Filed 2/24/22

**CERTIFIED FOR PUBLICATION**

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

SECOND APPELLATE DISTRICT

DIVISION TWO

| | |
|---|---|
| BROADCAST MUSIC, INC., | B304809 |
| Plaintiff, | (Los Angeles County Super. Ct. No. BC379432) |
| v. | |
| STRUCTURED ASSET SALES, LLC, | |
| Defendant and Appellant; | |
| CURRENCY CORPORATION, | |
| Defendant and Respondent; | |
| BROADCAST MUSIC, INC., | B306245 |
| Plaintiff, | |
| v. | |
| CURRENCY CORPORATION, | |
| Defendant and Appellant; | |
| STRUCTURED ASSET SALES, LLC, | |
| Defendant and Respondent. | |

APPEALS from orders of the Superior Court of Los Angeles County.  William F. Fahey, Judge.  Affirmed.

Law Offices of F. Jay Rahimi, F. Jay Rahimi; Matthew D. Kanin; AlvaradoSmith and William M. Hensley for Defendant and Appellant Structured Asset Sales, LLC.

Krane & Smith, Jeremy D. Smith and Daniel L. Reback for Defendant and Appellant Currency Corporation.

_____

This interpleader action arises out of a lengthy legal battle between Structured Asset Sales, Inc. (Structured) and Currency Corporation (Currency) over royalties and rights related to two sets of musical compositions.  Years of litigation and multiple appeals later, the trial court determined that Currency is entitled to the royalties as well as the rights to one set of musical compositions (Named Songs), that it has a security interest in the other set of musical compositions (Remainder Songs), and that Structured has no rights.  All that remains is litigation over attorney fees and sanctions.

Presently, Currency appeals from the denial of its motion to recover the attorney fees it incurred litigating consolidated appeals resolved in 2019.  Structured appeals from the denial of its motion for sanctions pursuant to Code of Civil Procedure

section 128.7.[1]  In that motion, Structured contended that Currency's motion for attorney fees was frivolous because it was barred by law of the case.

We find no error and affirm.

In part I of the Discussion, we conclude that the law of the case doctrine barred Currency's motion.  In part II of the Discussion, we hold that a party is not entitled to sanctions pursuant to section 128.7 unless the target of the motion has had a full 21 days to withdraw the allegedly offending paper, claim, defense, contention, allegation, or denial.  Thus, a moving party cannot file a motion for sanctions until the 22nd day after the motion was served.  Nor can the moving party file a motion for sanctions if the objectionable document has been resolved during the 21-day safe harbor period.  When calculating the earliest possible day that a motion for sanctions can be filed, section 12 applies such that the day the motion was served is excluded and the last day is included.  The trial court properly denied the motion for sanctions because it had resolved the attorney fees motion on the 21st day after service of the motion for sanctions, the last day of the safe harbor period.

## FACTS[2]

## "First Interpleader Action

"In a limited jurisdiction action, Broadcast Music, Inc. (BMI) filed an interpleader complaint against Currency, Music Royalty Consulting, Inc. (Music Royalty), [Adeniyi Jacob Paris [(Paris)] and Structured alleging:  BMI was in the business of licensing the public performance rights of copyrighted musical compositions.  Paris's works have been licensed by BMI since

---

[1]     All further references are to the Code of Civil Procedure unless otherwise indicated.

3

1970. In September 2006, $889.92 in royalties became payable due to the performance of Paris's works.

"Structured claimed a right to the royalties due to a January 10, 2006 assignment (January 10 Assignment). Currency, Music Royalty, and Paris, in contrast, averred that Currency had a perfected security interest in Paris's works, Currency foreclosed on the Named Songs because Paris defaulted on loans from Currency, and Music Royalty purchased the Named Songs at a public sale. They further averred that the portion of the royalties 'attributable to [the Named Songs, i.e.,] those compositions of [Paris] entitled "Lulu," "Sooner or Later," and "I've Just Got a Feeling Something" (alternate title "Something Good Is Coming My Way") . . . should be distributed by BMI to [Music Royalty],' and the portion of the royalties as to the rest of Paris's works [, i.e., the Remainder Songs,] should be distributed to Currency.

"The two main parties—Structured and Currency—sought to undermine the other's position with BMI. Structured claimed that Currency and Music Royalty did not have a claim to the royalties because Currency's loans to Paris were invalid due to violations of the Financial Code, and because the public sale was invalid. Currency, on the other hand, asserted that the January 10 Assignment was rescinded by Paris or was otherwise unenforceable.

---

**2**      In setting forth the facts of this case, we quote from *Broadcast Music, Inc. v. Structured Asset Sales, LLC* (July 30, 2019, B272418) [nonpub. opn.] *(Broadcast Music III)*, a decision in which we decided two of the appeals related to the parties' extensive litigation.

4

"BMI requested a legal determination regarding how it should distribute the royalties. The complaint incorporated documentation of the public sale to Music Royalty, the transfer of title to Music Royalty, and Paris's assignment to Structured.

"Paris defaulted. Structured defaulted, too, because it determined that $889.92 was not worth the cost of litigation. While the case was pending, Music Royalty assigned its interest in the Named Songs to Currency. Music Royalty was later dismissed.

"The judgment (2007 Judgment) awarded the interpleaded royalties to Currency." (*Broadcast Music III,* B272418, *supra*, at pp. 3–4, fn. omitted.)

"**Second Interpleader Action**

"In an unlimited jurisdiction action, BMI filed a complaint for interpleader and declaratory relief against Currency, Music Royalty, Paris and Structured. The complaint alleged that BMI was in possession of $771.94 in royalties and indicated, essentially, that Structured claimed ownership of all rights to the works through the January 10 Assignment and Currency claimed it was entitled to all of Paris's works due to the collateral estoppel effect of the first interpleader action. BMI requested a legal determination as to who should receive the royalties and a declaration of the parties' rights.

"Currency moved for summary judgment based on the collateral estoppel effect of the 2007 Judgment.[3] The evidence

---

[3] "This was Currency's second motion for summary judgment. Previously, the trial court granted Currency's first motion for summary judgment and we reversed in *Broadcast Music, Inc. v. Structured Asset Sales, Inc.* (Nov. 25, 2014, B248011) [nonpub. opn.]. Currency's first motion was deficient

5

established that the Named Songs were the only songs to ever generate royalties. In its papers, Currency disavowed any claim to the Remainder Songs. Structured filed a cross-motion for summary judgment and claimed ownership of all the works based on the January 10 Assignment.

"The trial court granted Currency's motion and denied Structured's motion based on collateral estoppel and Structured's failure to establish a triable issue as to whether it obtained a valid assignment. Also, the trial court deemed the motions to be 'motions for declaratory relief[,] and in that respect[] a declaration [was] made as to the relief sought by [the] parties in their cross-motions and in their [a]nswers[.]' The judgment stated Currency was entitled to recover the interpleaded funds. It declared that Structured had no rights to any of the songs, Currency was the owner of the Named Songs, and Paris was the owner of the Remainder Songs subject to Currency's security interest.

"Structured appealed the judgment.

"On June 13, 2016, Currency filed and served a notice and notice of motion for $176,869.09 in attorney fees and costs. It sought relief alternatively under Civil Code section 1717 or former section 128.5. Structured filed a motion to tax costs. On August 23, 2016, the trial court granted Currency's motion under former section 128.5 and denied Structured's motion.

"Structured appealed the sanctions order." (*Broadcast Music III*, B272418, *supra*, at pp. 4–6, fn. omitted.)

_____

because it focused on ownership of the Named Songs and did not resolve, inter alia, issues pertaining to the Remainder Songs or the source of the royalties."

***Broadcast Music III***

In *Broadcast Music III*, we affirmed the judgment "because collateral estoppel establishes that Currency owns the Named Songs, and because Structured failed to establish that it has a valid assignment of the Remainder Songs." (*Broadcast Music III*, B272418, *supra*, at p. 2.) We reversed the sanctions "because Currency's motion violated section 128.7, subdivision (c)(1) by failing to comply with the 21-day safe harbor provision, and by combining a sanctions motion with a motion for attorney fees under Civil Code section 1717." (*Broadcast Music III*, *supra*, at pp. 2–3.) We concluded that the denial of the motion to tax costs was moot. (*Id*. at p. 3.)

At the end of *Broadcast Music III*, we stated: "Currency requests an award of attorney fees on appeal based on Civil Code section 1717. But an award of such fees on appeal is only warranted when they were previously granted at the trial level. (*Butler-Rupp v. Lourdeaux* (2007) 154 Cal.App.4th 918, 923 ['Where a [Civil Code] section 1717 fee award is made at the trial level, the prevailing party may, at the appropriate time, request fees attributable to a subsequent appeal'].) Here, the trial court did not award attorney fees based on Civil Code section 1717. [¶] Currency requests that we award it attorney fees for 'the prior two appeals.' We are not aware of any authority permitting [the] Court of Appeal to reach back in time and make an award in an appeal that is final. [¶] We decline these requests." (*Broadcast Music III*, B272418, *supra*, at p. 17.)

The disposition directed the parties to bear their own costs on appeal. (*Broadcast Music III*, B272418, *supra*, at p. 18.)

7

**Currency's Motion for Attorney Fees**

On November 8, 2019, Currency filed a motion pursuant to Civil Code section 1717 for $209,385 in attorney fees incurred on appeal in *Broadcast Music III*.  The hearing date was identified as December 11, 2019.

**Safe Harbor Notice of Structured's Motion for Sanctions**

On November 20, 2019, Structured served but did not file a section 128.7 motion for $19,145.15 in sanctions in which it argued that Currency's motion for attorney fees incurred on appeal was frivolous because it was foreclosed by law of the case in *Broadcast Music III*.

**Denial of Currency's Motion for Attorney Fees**

The parties convened for a hearing on Currency's motion for attorney fees on December 11, 2019.

Prior to hearing argument, the trial court stated:  "This is . . . [Currency's] motion for attorneys' fees on appeal. . . .  And the tentative is to deny it.  [¶]  The Court of Appeal has clearly spoken in this case and indicated in two portions . . . of the opinion that an award of appellate attorneys' fees cannot be given when it was not granted at the lower court level, and, of course, it was not here.  [¶]  And in addition, the Court of Appeal[] said the parties on appeal shall bear their own cost, which in this case would include attorneys' fees."  Later, in response to an argument from Currency, the trial court concluded that it was bound by the holding in *Broadcast Music III* that an award of attorney fees pursuant to Civil Code section 1717 is "'only warranted when they were previously granted at the trial level[.]'"  The trial court added:  "I think, frankly, by failing to pursue before [the previous judge] an award of attorneys' fees, the ship sailed.  You waived it."

8

The trial court denied the motion.

Currency appealed.

**The Filing of Structured's Motion for Sanctions**

On December 13, 2019, Structured filed its section 128.7 sanctions motion.

**Denial of Sanctions**

On January 9, 2020, the trial court called Structured's sanctions motion for a hearing and concluded that Structured had failed to give Currency the benefit of the full 21-day safe harbor period required by section 128.7 and *Li v. Majestic Industry Hills LLC* (2009) 177 Cal.App.4th 585, 588–596 (*Li*). The sanctions motion was denied.

Structured appealed.

## DISCUSSION

### I. Currency's Appeal.

Currency contends:  (1) the law of the case doctrine did not bar the trial court from awarding attorney fees; and (2) it was entitled to contractual attorney fees because it was the prevailing party in an action that fell within the scope of the attorney fee provision in Paris's security agreement.  We conclude that the trial court correctly applied the law of the case doctrine.  The second issue is moot.

Our review is de novo.  (*Leider v. Lewis* (2017) 2 Cal.5th 1121, 1127 (*Leider*).)

"'The law of the case doctrine holds that when an appellate opinion states a principle or rule of law necessary to the decision, that principle or rule becomes the law of the case and must be adhered to through its subsequent progress in the lower court and upon subsequent appeal.  [Citations.]'" (*People v. Cooper* (2007) 149 Cal.App.4th 500, 524.)  The doctrine does not apply

9

unless the point of law involved was necessary to the prior decision, the matter was presented to the court and determined by it, and application of the doctrine will not result in an unjust decision. (*Ibid*.) The doctrine is applicable to "'questions not expressly decided but implicitly decided because they were essential to the decision on the prior appeal.' [Citation.]" (*Leider*, *supra*, 2 Cal.5th at p. 1127.)

In *Broadcast Music III*, we necessarily determined that in the context of this case an award of attorney fees incurred in the trial court had to precede an award of attorney fees incurred on appeal. The issue was presented to us when Currency made a one sentence request that we award attorney fees incurred on appeal even though there had been no prior finding that an applicable contract provided for attorney fees and that Currency was the prevailing party on that contract. In essence, we held that Currency waived any further claims to attorney fees when it sat on its rights by not insisting on a ruling on its original motion and by not appealing the trial court's de facto denial of that motion.[4] A waiver may occur as a result of an intentional relinquishment of a known right or an act which, according to its natural import, is so inconsistent with an intent to enforce the right as to induce a reasonable belief that such right has been relinquished. (*Nordstrom Com. Cases* (2010) 186 Cal.App.4th 576, 583.) By not pursuing its rights, Currency intentionally abandoned its contractual attorney fees theory and decided to put all its eggs in one basket, choosing to rely on the sanctions award to recoup its expenses.

---

[4] If Currency had obtained a ruling from the trial court or appealed the trial court's failure to rule on its motion for attorney fees, there would be no waiver.

10

## II. Structured's Appeal.

According to Structured, the trial court erred when it calculated the safe harbor period and applied *Li* when denying the sanctions motion. We disagree.

Our review is de novo because the issue presented is one of statutory interpretation. (*Klem v. Access Ins. Co.* (2017) 17 Cal.App.5th 595, 619). The goal of statutory interpretation is to "ascertain the intent of the Legislature so as to effectuate the law's purpose. [Citation.]" (*California Ins. Guarantee Assn. v. Workers' Comp. Appeals Bd.* (2012) 203 Cal.App.4th 1328.) If a statute is clear and unambiguous, the obvious meaning must ordinarily be accepted. (*Ibid.*)

Section 128.7, subdivision (c)(1) establishes that a notice of motion for sanctions "shall be served as provided in Section 1010, but shall not be filed with or presented to the court unless, within 21 days after service of the motion, or any other period as the court may prescribe, the challenged paper . . . is not withdrawn[.]" "'Service of the motion on the offending party begins a [21]-day safe harbor period.'" (*Martorana v. Marlin & Saltzman* (2009) 175 Cal.App.4th 685, 698, fn. omitted (*Martorana*).) The purpose of the safe harbor period is to allow a party to withdraw an objectionable document and thereby conserve judicial resources as well as save the parties the time and expense of litigating sanctions. The statute is remedial, not punitive. (*Li, supra,* 177 Cal.App.4th at pp. 593–594; *Martorana, supra,* at p. 699.) We conclude that the statute is unambiguous. A sanctions motion cannot be filed until the 22nd day after service of the motion, i.e., after the 21-day safe harbor period expires.

11

The statute does not provide a formula for calculating the safe harbor period.  We turn to section 12 for guidance.  It provides:  "The time in which any act provided by law is to be done is computed by excluding the first day, and including the last, unless the last day is a holiday."  (§ 12.)

When the date the sanctions motion was served (Nov. 20, 2019) is excluded from the calculation, the 21st day of the safe harbor period was December 11, 2019.  The 22nd day following service—and the first day that Structured's motion for sanctions could conceivably have been filed under the terms of section 128.7—was December 12, 2019.  It was, of course, not filed until December 13, 2019.

Nonetheless, the trial court correctly concluded that sanctions motion was improperly filed, and that sanctions would have been unauthorized.  "If the merits of the objectionable document are resolved by the court prior to the expiration of the safe harbor period, there is nothing left to correct or withdraw, thereby undermining the remedial purpose of the safe harbor provision.  (*Li, supra*, 177 Cal.App.4th at p. 594.)  The "central principle to be distilled from section 128.7's language and remedial purpose, as well as from appellate opinions interpreting section 128.7 and [the federal rule it was modeled after], is that the safe harbor period is mandatory and the full 21 days must be provided absent a court order shortening that time if sanctions are to be awarded."  (*Li, supra,* at p. 595.)  Thus, if the objectionable document is resolved by the court during the safe harbor period, sanctions cannot be awarded.  (*Id.* at pp. 595–596.)  Here, the objectionable document (the motion for attorney fees) was resolved on December 11, 2019, which was the last day of the safe harbor period and before that period expired.  Consequently,

the sanctions motion was improperly filed on December 13, 2019. If Structured wanted to preserve its right to obtain sanctions, it should have requested an order shortening the safe harbor period or sought a continuance of the attorney fees motion to a later date. (*Id*. at p. 594.)

Contrary to which Structured assumes, 21 days is not a notice period. It is strictly a safe harbor period. It defines when the target of a sanctions motion can act without penalty and withdraw an objectional document. The time for filing a sanctions motion is dictated by the safe harbor period because, per the clear import of the statute, a motion for sanctions must be filed *outside* the safe harbor period. It cannot be filed on day one of the safe harbor period, day 21 of the safe harbor period, or any day in between. Moreover, a sanctions motion is improperly filed where, as here, the objectionable document was resolved during the safe harbor period.

## DISPOSITION

The orders are affirmed. The parties shall bear their own costs on appeal.

## **CERTIFIED FOR PUBLICATION**.

_____, J.
ASHMANN-GERST

We concur:

_____, P. J.
LUI

_____, J.
CHAVEZ

13